610 F.2d 384
 102 L.R.R.M. (BNA) 2653, 87 Lab.Cas. P 11,630,
5 Bankr.Ct.Dec. 913
 MANAGEMENT INVESTORS and Norman C. Reid, f/d/b/a Lewis Coal
Company and James W. Brummett f/d/b/a Southern
Belle Trucking Co. Inc., Plaintiffs-Appellants,
v.
UNITED MINE WORKERS OF AMERICA, Defendant-Appellee.
 No. 78-1428.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 21, 1979.
Decided Oct. 25, 1979.
 
 Terry M. Brooks, Constangy, Brooks & Smith, Nashville, Tenn., Charles A. Edwards, Lovic A. Brooks, Jr., Atlanta, Ga., for plaintiffs-appellants.
 E. H. Rayson, James Ridley, III, Kramer, Johnson, Rayson, McVeigh & Leake, Knoxville, Tenn., Harrison Combs, Willard P. Owens, Washington, D. C., for defendant-appellee.
 Before CELEBREZZE, KEITH and MERRITT, Circuit Judges.
 KEITH, Circuit Judge.
 
 
 1
 James W. Brummett and Lewis Coal Company[1] appeal from judgments below dismissing their claims for damages against the United Mine Workers of America (UMW) under Section 303 of the Labor-Management Relations Act, 29 U.S.C. § 187, as amended.[2] Lewis Coal Company also appeals from the district court's dismissal of its state law claims. We affirm.
 
 FACTS
 
 2
 This action arises out of a labor dispute that occurred in Morgan and Scott Counties, Tennessee in early 1975. The parties involved in the dispute were plaintiff Lewis Coal Company,[3] plaintiff James W. Brummett, a coal hauler operating under the incorporated name Southern Belle Trucking Co., Inc. (Southern Belle), and defendant United Mine Workers of America.
 
 
 3
 Plaintiff Lewis Coal Company commenced mining operations at the primary site of the dispute in December, 1974. On January 27, 1975, the Company terminated all of its employees, except for mechanics and a few helpers, and temporarily closed down for equipment repairs. The terminated employees, disgruntled by the Company's actions, contacted UMW representatives and subsequently authorized the UMW to seek to become their bargaining representative.
 
 
 4
 On February 3, 1975, a group of former employees began picketing the mine site. A UMW representative reportedly identified himself to Lewis Coal Company's assistant supervisor and informed him that the former employees had been told that the Company had a new crew and that the pickets were seeing to it that the new crew was not going to work. On this first day of picketing, plaintiff Brummett[4] allegedly was halted at the picket line and informed that he, as well as the Company, was being picketed by the UMW. On February 11, 1975, the UMW filed a petition with the N.L.R.B. for certification as the employees' bargaining representative.
 
 
 5
 In late February and early March, 1975, violence, both at and away from the mine site, resulted in unfair labor practice charges being filed against the UMW. In addition, a suit brought by the Company in state court resulted in injunctive relief and subsequent findings of contempt against a number of the more active pickets.
 
 
 6
 The Company terminated Brummett's contract in February or early March, 1975. After Lewis Coal Company terminated him, Brummett hauled coal for other operators until December, 1975. On December 30, 1976, both Brummett and Southern Belle were adjudged bankrupts.
 
 
 7
 The picketing continued and the UMW gave the pickets weekly strike benefits from February 3 to July 18, 1975. However, the violence was ended by an April 7, 1975, stipulation between the UMW and the NLRB. In July, the Union abandoned the strike and withdrew its petition for an election. In June, 1976, Lewis Coal Company ceased its mining operations.[5]
 
 
 8
 On January 30, 1978, Brummett and Lewis Coal Company initiated the present action for damages under Section 303. Additionally, plaintiffs sought treble damages under Section 47-15-113, Tenn.Code Ann.,[6] and punitive damages for alleged violations of Tennessee common law.
 
 
 9
 The trial in this case was originally scheduled to commence on June 6, 1978. Pursuant to a pretrial order, the trial was rescheduled to July 25, 1978, with trial briefs and jury charges to be filed on or before June 15, and witness lists to be exchanged by May 10, 1978.[7] Pursuant to the terms of a stipulation entered into by the parties and approved by the court on June 8, 1978, trial by jury was waived; the parties were ordered to file proposed findings of fact and conclusions of law by July 17, 1978.[8]
 
 
 10
 On July 14, eleven days prior to trial, plaintiffs filed their pretrial briefs. Three days later, on July 17, the date specified in the court's order of June 8, plaintiffs filed proposed findings of fact and conclusions of law. On July 18, 1978, the Union filed a motion for summary judgment seeking to dismiss Brummett's claims on grounds that the right to pursue these claims had vested exclusively in the trustee of Brummett's bankrupt estate.
 
 
 11
 It appears that plaintiff's counsel learned of the Union's motion purely by accident while making inquiry to the clerk on July 19 as to the status of the Union's overdue pretrial brief and proposed findings of fact and conclusions of law. Upon discovering that the motion and a brief in support thereof had been filed the previous day, plaintiff's counsel opposed the motion in a telegram delivered to the court on July 20, 1978.[9] On that same day, the court entered an order granting the Union's motion for summary judgment and dismissed Brummett as a party plaintiff.[10]
 
 
 12
 When the cause came on for trial as scheduled on July 25, 1978, the court declined in its discretion to exercise pendent jurisdiction over that portion of the complaint alleging violations of state law. The court, therefore, Sua sponte dismissed Lewis Coal Company's claims arising under the laws of Tennessee. Following the court's dismissal of its state law claims, Lewis Coal Company requested and was granted a voluntary dismissal without prejudice of its Section 303 claims pursuant to Rule 41(a)(2), F.R.Civ.Pro.[11]
 
 I. Summary Judgment
 
 13
 * Brummett contends that the district court acted improperly in granting the Union's two-day-old motion for summary judgment. We agree.
 
 
 14
 Summary judgment does serve a worthwhile cause. As the Fourth Circuit has noted:
 
 
 15
 Summary judgment is to avoid a useless trial. It is a device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts.
 
 
 16
 Bland v. Norfolk and Southern Railroad Company, 406 F.2d 863, 866 (4th Cir. 1969). To facilitate this purpose, Rule 56(b),[12] F.R.Civ.Pro., allows a motion for summary judgment to be made by a defendant at any time. But this Court has often cautioned
 
 
 17
 . . . that a trial judge should be slow in disposing of a case of any complexity on a motion for summary judgment, that while such a judgment wisely used is a praiseworthy and timesaving device, yet such prompt dispatch of judicial business is neither the sole nor the primary purpose for which courts have been established, and that a party should not be deprived of an adequate opportunity to fully develop his case by witnesses and a trial, when the issues involved make such procedure the appropriate one. . . .
 
 
 18
 S. J. Groves & Sons v. Ohio Turnpike Com., (6th Cir.) 315 F.2d 235, 237, Cert. denied, 375 U.S. 824, 84 S.Ct. 65, 11 L.Ed.2d 57 (1963). See Smith, et al. v. Hudson, et al., 600 F.2d 60 (6th Cir. 1979); Tee-Pak, Inc. v. St. Regis Paper Co., 491 F.2d 1193, 1196 (6th Cir. 1974); Hart v. Johnston, 389 F.2d 239, 241 (6th Cir. 1968).
 
 
 19
 Even where otherwise warranted, courts have uniformly held that such motions are inappropriate on the eve of trial. See Williams v. Howard Johnson's Inc. of Washington, 323 F.2d 102 (4th Cir. 1963); Woods v. Robb, 171 F.2d 539 (5th Cir. 1948); Clark v. Hancock, 45 F.R.D. 512 (S.D.Ga.1968). And where no leave to respond is accorded, the inherent prejudice of a belated motion for summary judgment is even further accentuated. Kistner v. Califano, 579 F.2d 1004 (6th Cir. 1978); Bowdidge v. Lehman, 252 F.2d 366 (6th Cir. 1958); Ailshire v. Darnell, 508 F.2d 526, 528 (8th Cir. 1974); Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 480 F.2d 607 (10th Cir. 1973); Georgia Southern & Florida Ry. v. Atlantic Coast Line R. R., 373 F.2d 493 (5th Cir.), Cert. denied, 389 U.S. 851, 88 S.Ct. 69, 19 L.Ed.2d 120 (1967). See also, Enochs v. Sisson, 301 F.2d 125 (5th Cir. 1962); Adams v. Campbell County School District, 483 F.2d 1351 (10th Cir. 1971); Macklin v. Butler, 553 F.2d 525 (7th Cir. 1977).
 
 
 20
 In choosing to act as it did on this two-day-old motion for summary judgment, the district court disposed of a complex case without even permitting plaintiffs the benefits of applicable procedural rules. Local Rule 12(b)[13] allows a party five days after a motion is served to respond. And where the motion is determinative of the case on the merits, Local Rule 12(c)[14] provides for an oral hearing upon request by either party. Under rule 56(c), F.R.Civ.Pro.,[15] a litigant has a minimum of ten days within which to respond to a motion for summary judgment.
 
 
 21
 In this case, however, the Union's motion was not served upon Brummett's counsel until July 20, the same day the district court rendered its decision granting the motion. We are of the view that these precipitous acts by the trial court denied plaintiff his due process right to be heard.[16]
 
 
 22
 Ordinarily, our finding here would require that we reverse and remand this cause in order that plaintiff might be permitted an opportunity to properly oppose the motion. But as the question presented here is purely one of law, we go on to decide it. And while we do not approve of the district court's conduct, our review of the pertinent law persuades us that the error committed here was harmless.
 
 B
 
 23
 Considering the motion on the merits, the district court held that title to Brummett's right of action vested exclusively in the trustee of his bankrupt estate under Section 70a(6) of the (old) Bankruptcy Act, 11 U.S.C. § 110a(6), upon his filing of a voluntary petition in bankruptcy.[17] The court found that Brummett was divested of this cause of action because it arose upon contract or, in the alternative, claimed damages "of general financial ruin which constitutes an injury to his property." Plaintiff contends that the court committed reversible error. We disagree.
 
 
 24
 Section 70(a)(6) provides in pertinent part:
 
 
 25
 110. Title to property. (a) The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this Act (this title), except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located . . . (6) rights of action arising upon contracts, or usury, or the unlawful taking or detention of or injury to his property . . . .
 
 
 26
 The case law in the area suggests that causes of action "arising upon contract" within the contemplation of § 70a(6) involve actions to enforce rights created by virtue and pursuant to the terms of a contract. See Tobin v. Plein, 301 F.2d 378 (2nd Cir. 1962); Hudson v. Wylie, 242 F.2d 435, 443 (9th Cir. 1957); Moore v. Slonim, 426 F.Supp. 524, 526 (D.Conn.), Aff'd, 562 F.2d 38 (2d Cir. 1977). In other words, causes of action arising upon contract are to enforce the contractual obligations of a party to the contract.
 
 
 27
 While the claims asserted by Brummett in this action are to recover for an alleged injury to his contractual relationship with Lewis Coal Company, they clearly are not to enforce any rights which he may have had pursuant to a contract. Thus it would appear that to the extent the district court viewed Brummett's claims as vesting in the trustee because they arose on a contract, the court erred.
 
 
 28
 Our disposition of the district court's first holding requires that we address its holding that Brummett's claims vested in the trustee because they arose upon an injury to his property. The crucial question here concerns whether Brummett's contractual relationship with Lewis Coal Company constituted "property" within the meaning of § 70a(6). We are guided here by recent Supreme Court precedent. See Kokoszka v. Belford, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1973).[18]
 
 In Kokoszka, supra, the Court noted:
 
 29
 The term has never been given a precise or universal definition. On an earlier occasion in Segal v. Rochelle, 382 U.S. 375 (, 86 S.Ct. 511, 15 L.Ed.2d 428) (1966), the Court noted " '(i)t is impossible to give any categorical definition to the word "property," nor can we attach to it in certain relations the limitations which would be attached to it in others.' " Id., at 379 (86 S.Ct. at 515,) quoting Fisher v. Cushman, 103 F. 860, 864 (CA 1, 1900). In determining the term's scope and its limitations the purposes of the Bankruptcy Act "must ultimately govern." 382 U.S. at 379 (86 S.Ct. at 515). See also Lines v. Frederick, 440 U.S. 18 (, 91 S.Ct. 113, 27 L.Ed.2d 124) (1970); Local Loan Co. v. Hunt, 292 U.S. 234 (, 54 S.Ct. 695, 78 L.Ed. 1230) (1934).
 
 
 30
 417 U.S. at 645, 94 S.Ct. at 2433.
 
 
 31
 Noting the twofold purpose of the Bankruptcy Act of paying off the bankrupt's creditors and giving the bankrupt a fresh start, 417 U.S. at 645-646, 94 S.Ct. 2431, the Court suggested that the "property" issue is to be resolved by determining whether the asset in question is " 'sufficiently rooted in the prebankruptcy past' " that depriving the bankrupt of it to pay his creditors " 'will not hinder his ability to make a Fresh start unhampered by the pressure of preexisting debt,' " 417 U.S. at 648, 94 S.Ct. at 2435.
 
 
 32
 The claims asserted by Brummett in this action are for alleged injury to a contractual relationship which presumably was, in addition to other things, generating income for the payment of then existing debts and which was terminated over 11/2 years before he was adjudged bankrupt. To deprive him of this asset would not appear to unduly hinder his ability to make a fresh start.
 
 
 33
 Thus, applying the Kokoszka test to the instant case, we conclude that the court below was correct in holding that Brummett's cause of action vested in the trustee of his bankrupt estate under § 70a(6) because it arose upon an injury to his property.[19] See In re Farrell Publishing Corp.,165 F.Supp. 40 (S.D.N.Y.1958).
 
 
 34
 In some cases, a bankruptcy trustee chooses to formally abandon a claim. In such cases, the cause of action revests in the bankrupt, and he can then bring suit. In this case, however, Brummett never brought these claims to the trustee's attention. Thus, it cannot be said that they revested in him because the trustee abandoned them. See Scharmer v. Carrollton Mfg. Co., 525 F.2d 95, 98 (6th Cir. 1975); Dallas Cabana Inc. v. Hyatt Corporation, 441 F.2d 865, 867 (5th Cir. 1971); Slonim, supra. Thus Brummett cannot now, after having been discharged in bankruptcy, assert this cause of action. First National Bank v. Lasater, 196 U.S. 115, 25 S.Ct. 206, 49 L.Ed. 408 (1905); Scharmer, supra, at 98-99; Dallas Cabana, Inc.,supra at 867-868; Wallace v. Lawrence Warehouse Company, 338 F.2d 392, 395 (9th Cir. 1964). Gochenour v. George & Francis Ball Foundation, 35 F.Supp. 508 (D.C.Ind.1940), Aff'd, 117 F.2d 259 (7th Cir. 1941); Constant v. Kulukundis, 125 F.Supp. 305 (S.D.N.Y.1954). See also, Danciger and Emerich Oil Company v. Smith, 276 U.S. 542, 545-547, 48 S.Ct. 344, 72 L.Ed. 691 (1928).
 
 C
 
 35
 Brummett argued to the court below that upon holding that title to the claims asserted by him in this action had passed to the trustee, the proper course for the court would be to join the trustee as a party plaintiff. Noting that the bankruptcy case had been closed, the court rejected this suggestion, stating that "(f)urther action with reference to assets in the estate can only proceed in accordance with Bankruptcy Rule 515."[20] On this appeal Brummett contends that the district court's dismissal of his claims without prejudice was an abuse of discretion. He claims that the court should have either a) ordered notice to and joinder of the trustee in bankruptcy, or b) allowed him to proceed for the benefit of his creditors. We disagree.
 
 
 36
 It is true that the parties were already before the court, that the issues in the case had already been framed, and that to require the parties to go back and file an entirely new lawsuit is not the most economical use of judicial resources imaginable. See Gerr v. Schering Corp., 256 F.Supp. 572, 574 (S.D.N.Y.1966); James v. Iridyn Industries, Inc., Civil Action No. C-78-924-A (N.D.Ga., September 15, 1978). Were we considering this suggestion De novo as a trial court, we might well agree that the most reasonable solution to the problem presented by this case would be to stay the proceedings so that the bankruptcy proceedings could be reopened and the trustee made a party plaintiff.
 
 
 37
 But as the district court noted, the closing of the bankruptcy case means that the trustee had already distributed the bankrupt's assets to his creditors and filed an account with and been discharged by the court. At the time of this case, there was no trustee to notify or join in the present action. Re-opening the case pursuant to Rule 515 would have involved at least some delay in the prosecution of this action.
 
 
 38
 In light of these facts, we cannot say that it constituted an abuse of discretion for the district court to rule as it did. This is particularly so since the predicament in which Brummett now finds himself is the result of his never having listed this right of action as an asset of his bankruptcy estate or otherwise brought it to the trustee's attention.
 
 
 39
 Nor did the district court abuse its discretion in refusing to permit Brummett to proceed for the benefit of his creditors. As the creditors themselves would have had to obtain leave from the bankruptcy court before proceeding on their own behalf, See Gochenour, supra at 517, Brummett stands in no better position. See Dallas Cabana, Inc., supra at 868. Since Brummett failed to obtain such prior authorization from the bankruptcy court, the district court was without authority to permit Brummett to proceed in this action for the benefit of his creditors.
 
 II. Dismissal of State Law Claims
 
 40
 Plaintiff Lewis Coal Company contends that the district court abused its discretion in dismissing its pendent state claims. In response, the Union argues that Lewis Coal Company, having moved for and been granted a voluntary non-suit of its Section 303 claims without prejudice, now lacks standing to appeal from the district court's prior order declining to exercise pendent jurisdiction over the asserted law claims. We agree.
 
 
 41
 The general rule is to be that a plaintiff who has requested and been granted or agreed to a voluntary dismissal of his action without prejudice cannot maintain or prosecute an appeal from the order of dismissal. Le Compte v. Mr. Chip, Inc., 528 F.2d 601, 603 (5th Cir. 1976); Scholl v. Felmont Oil Corp., 327 F.2d 697, 700 (6th Cir. 1964); Kelly v. Great Atlantic & Pacific Tea Company, 86 F.2d 296 (4th Cir. 1936); Annot. 23, A.L.R.2d § 2, p. 664; 5 Moore's Federal Practice P 41.05(3), at 41-79 (2d ed. 1978). Accord, 9 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2376, at 247 (1971). As the court stated in Kelly, supra:
 
 
 42
 It is well settled that, from a judgment of involuntary nonsuit, an appeal lies by the party aggrieved, as such a judgment is not only a final determination of the action but has been rendered without the consent and over the objection of the plaintiff who complains of it. . . . But, although a voluntary nonsuit is a final termination of the action, it has been entered at the request of plaintiff, and he may not, after causing the order to be entered, complain of it on appeal. For this reason, it is well settled in the federal courts that no appeal lies from a judgment of voluntary nonsuit.
 
 
 43
 86 F.2d at 296-297 (citations omitted). In explaining the rationale underlying the rule, the court in Le Compte, supra, stated:
 
 
 44
 This can easily be understood since the plaintiff has acquired that which he sought, the dismissal of his action and the right to bring a later suit on the same cause of action, without adjudication of the merits. The effect of this type of dismissal is to put the plaintiff in a legal position as if he had never brought the first suit. Maryland Casualty Co. v. Latham, 41 F.2d 312, 313 (5th Cir. 1930); Humphreys v. United States, 272 F.2d 411, 412 (9th Cir. 1959).
 
 
 45
 528 F.2d at 603.
 
 
 46
 After the district court dismissed Lewis Coal Company's pendent state claims, the Company requested and was granted a voluntary dismissal of its Section 303 claim. The above-cited authority makes clear that it cannot now appeal the order of dismissal.
 
 
 47
 Plaintiff tries to side-step the above conclusion by arguing that the appeal here is only from that portion of the July 25 order dismissing its pendent state claims and not from that portion of the order wherein the trial court approved a voluntary dismissal of the federal claims under Rule 41(a)(2), F.R.Civ.Pro. While true, this technicality is of no benefit to plaintiff. As the court in Kelly, supra, explained in an analogous situation:
 
 
 48
 It does not help plaintiff to say that his complaint is of the order refusing remand of the cause and not of the judgment of nonsuit, which is relied upon merely as a final order from which appeal may be taken. Even in those rare jurisdictions . . . which permit appeal from an order of voluntary nonsuit where there is a ruling of the court which strikes at the heart of the case and precludes recovery by plaintiff, appeal from such order does not lie to review rulings which do not have the effect of determining the case against plaintiff. . . . The order refusing to remand the case did not, of course, determine it; and it cannot be said that, when plaintiff refused to proceed, there was nothing for the court to do but to dismiss the case and that it was therefore virtually ended. If plaintiff, after refusing to proceed, had not taken a voluntary nonsuit, defendant could have insisted on a verdict and judgment of the merits, which would have been determinative of the rights of the parties and would not have left plaintiff at liberty to commence another action for the same cause, as is his right under the voluntary nonsuit. The crux of the matter is that an order refusing to remand is not a final or appealable order, and plaintiff cannot make it in effect appealable by the simple expedient of taking a voluntary nonsuit and appealing.
 
 
 49
 86 F.2d at 297 (citations omitted).
 
 
 50
 In some cases involving multi-count complaints, a court will permit a plaintiff who has voluntarily dismissed certain of the counts to appeal from an involuntary dismissal of the remaining counts. This was the case in Division 241 Amalgamated Transit Union (AFL-CIO) v. Suscy, 538 F.2d 1264 (7th Cir. 1976), where the court ruled that the judgment of the district court granting plaintiff's motion to dismiss Count I of a four-count complaint was a final and appealable order where the plaintiff had requested and been granted a voluntary dismissal without prejudice of the remaining three counts.[21]
 
 
 51
 But while often dubbed a Rule 41(a) voluntary dismissal, the procedure followed in Suscy, supra, is more properly viewed as a Rule 15 amendment to the complaint. See 5 Moore's Federal Practice P 41.06-1, at 41-92-93;[22] Smith, Kline & French Laboratories v. A. H. Robins Co., 61 FRD 24, 28-29 (E.D.Pa.1973). See also Fastener Corp. v. Spotnails, Inc., 291 F.Supp. 974, 976 (N.D.Ill.1968).
 
 
 52
 Viewed in this light, it becomes clear that while this procedural difference may be of no consequence when claims of equal footing are involved, it makes a great deal of difference in a case such as the present. For to say that plaintiff's dismissal of the federal claims constituted an amendment of the complaint is also to say that there remains no federal claims to which the state claims may be appended.
 
 
 53
 We note that while the dismissal of the state claims precluded their adjudication on the merits in this lawsuit, it did not preclude their adjudication in a state court. And as the court's decision to dismiss the pendent claims was without prejudice, this judgment has no Res judicata effect even in a subsequent suit filed in federal court.
 
 
 54
 Having determined that the Company's voluntary dismissal of its Section 303 claims precludes it from complaining of the district court's dismissal of the pendent state claims, we need not address whether the court's dismissal of those claims constituted an abuse of discretion.
 
 
 55
 Accordingly, the judgment of the district court holding that title to Brummett's claims vested exclusively in the trustee of his bankrupt estate and dismissing Lewis Coal Company's pendent state claims is affirmed.
 
 
 
 [1]
 Lewis Coal Company is a partnership owned by Norman C. Reid of Birmingham, Alabama and Management Investors, itself a partnership consisting of James Stewart of Nashville, Tennessee and other investors
 
 
 [2]
 29 U.S.C. § 187 provides in pertinent part:
 § 187. Unlawful activities of labor union Rights of action for injury
 (a) It shall be unlawful . . . in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 8(b)(4) of the National Labor Relations Act . . . .
 (b) Whoever shall be injured in his business or property by reason or (of) any violation of subsection (a) may sue therefore in any district court of the United States subject to the limitations and provisions of section 301 hereof (29 U.S.C. § 185) without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit.
 
 
 [3]
 At the time, Lewis Coal Company actually consisted of two entities: the S & R Partnership, a general partnership organized under the laws of Tennessee, and the Stewart-Reid Coal Company. The entities operated pursuant to an arrangement whereby the S & R Partnership leased the mineral rights to certain properties in Scott and Morgan Counties while the Stewart-Reid Coal Company mined and sold the coal recovered pursuant to the mineral leases. The Lewis Coal Company apparently got its name from these two entities' predecessor in interest, the C. R. Lewis Coal Company, Inc., upon the latter's transfer of its leases, equipment and trade name to the entities pursuant to an option entered into in late November, 1974
 
 
 [4]
 In January, 1975, Brummett, who had incorporated his coal hauling business under the name of Southern Belle Trucking Company, Inc., entered into an exclusive contract with Lewis Coal Company whereby all coal mined by Lewis Coal Company would be hauled by Brummett
 In its statement of facts, the Union notes that while Brummett commenced this action as an individual doing business as Southern Belle Trucking Company and while the complaint states that Brummett entered into a hauling contract with Lewis Coal Company, in fact, the written hauling agreement indicates that it was between Lewis Coal Company, on the one hand, and Brummett and Southern Belle Trucking Company, Inc., a corporation, on the other. The Union also notes that plaintiffs' proposed findings of fact stated that the contract was with Southern Belle, which is in accord with Brummett's deposition testimony that he signed the contract only as a guarantor.
 While the Union raised these points in its statement of the case, it makes no use of them in its argument. As the court is unaware of their particular significance to the issues before us, we will restrict our consideration of them to this notation.
 
 
 [5]
 In November, 1975, Lewis Coal Company, Inc. was dissolved pursuant to Section 333 of the Internal Revenue Code and its assets and liabilities were transferred to the S & R Partnership. Thus S & R is the real party in interest in this action to enforce the rights of Lewis Coal Company
 
 
 [6]
 Section 47-15-113, Tenn.Code Ann., provides:
 It shall be unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party hereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of said contract; and the party injured by such breach may bring his suit for said breach and for such damages.
 
 
 [7]
 The requirement for and timing of these items are set out in the Local Court Rules. Local Rule 11(d)(e), Eastern District of Tennessee provides:
 (d) Trial briefs shall:
 
 
 [1]
 Contain a concise statement of the case
 
 
 [2]
 Contain a statement of the propositions of law upon which counsel expects to rely, together with citations of authorities in support thereof, quoting pertinent excerpts from such authorities and stating the source by volume and page
 
 
 [3]
 Be filed not less than 10 days before the case is set for trial; reply briefs must be filed within 5 days after the original briefs are filed and should not exceed 10 pages
 (e) If the case is to be tried to a jury, counsel shall, unless otherwise ordered by the Court, furnish the Court at least 10 days in advance of the trial suggested charges to the jury and shall support same with citations of authority on novel questions of law. Each suggested charge shall be written on a separate sheet of paper. In non-jury cases, counsel shall supply the court with suggested findings of fact and conclusions of law, to be supported by citations of authority, at least 10 days prior to the trial date unless otherwise ordered by the Court. Counsel shall supply copies of trial briefs, suggested charges, and proposed findings of fact and conclusions of law to opposing counsel.
 Local Rule 9(c), Eastern District of Tennessee, provides:
 (c) Counsel should utilize discovery to the fullest in advance of pre-trial and be prepared at the conference to make a clear statement of the issues, stipulations of facts, supply lists of exhibits, witnesses to be used and other pertinent items, and provide a brief summary of novel questions of law which are likely to arise.
 Local Rule 14, Eastern District of Tennessee, provides in part:
 In all civil actions, prior to the trial of the case, counsel shall stipulate all undisputed facts.
 
 
 [8]
 Presumably, the stipulation and order also re-set the date for submission of pretrial briefs, or left that issue to disposition under the Local Court Rules. See Note, 6, Supra
 
 
 [9]
 Plaintiffs had requested that, inasmuch as less than a week remained before the scheduled commencement of trial and because they had inadequate time to respond, consideration of the motion be delayed until the day of the trial. However, the court denied the request, stating:
 "The defendant has already briefed this point (Plaintiffs' trial brief at 29-30) and has raised it elsewhere. (Plaintiffs' proposed Finding of Fact and Conclusions of Law at 16-17). Under these circumstances, further time would not clarify this issue.
 
 
 [10]
 Also on July 20, three days late, the Union filed its proposed findings of fact and conclusions of law. No pretrial brief was ever filed on behalf of the Union
 
 
 [11]
 Rule 41(a) provides:
 DISMISSAL OF ACTIONS
 (a) Voluntary Dismissal: Effect Thereof.
 (1) By Plaintiff; by Stipulation. Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.
 (2) By Order of Court. Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.
 
 
 [12]
 Rule 56(b), F.R.Civ.Pro., provides:
 (b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.
 
 
 [13]
 Local Rule 12, Eastern District of Tennessee, provides:
 There shall be no motion day.
 (a) Counsel shall submit with all written motions a brief with authorities, and where allegations of fact are relied upon, affidavits in support thereof.
 (b) Respondent's counsel desiring to submit a response, brief, or affidavits, shall submit the same within five days after service of movant's motion and brief, or said respondent's brief will be deemed waived.
 (c) All motions will be decided by the Court without a hearing unless otherwise ordered by the Court on its own motion, or in its discretion upon request of counsel, Provided, That, if the motion is determinative of the case on the merits, the Court will allow an oral hearing if requested by either party. The Clerk will notify counsel of all parties of the date and time of the hearing.
 
 
 [14]
 See note 10, Supra
 
 
 [15]
 Rule 56(c), F.R.Civ.Pro., provides:
 (c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. . . .
 
 
 [16]
 The district court also denied plaintiffs the opportunity afforded under Rule 56(f), F.R.Civ.Pro., to present evidence essential to justify their opposition to the motion. In rejecting plaintiffs' request to delay consideration of the motion until the day of trial in order that they might respond, the court stated that plaintiffs had already briefed the issue raised in the motion in their pretrial brief and raised it in their proposed Findings of Fact and Conclusions of Law and that "further time would not clarify the issue." See n. 8, Supra
 However, the fact that the issue had been addressed elsewhere cannot serve as the basis for denying plaintiff an opportunity to address the issue as specifically raised in the motion. Considerations of justice and fair play required that plaintiff be granted an opportunity to respond to the motion prior to the court's decision, particularly since all plaintiff requested was an opportunity to respond to the motion at the trial which, by then, was only three working days away.
 
 
 [17]
 In their brief, Plaintiffs suggest that the Union's failure to raise the bankruptcy issue as an affirmative defense in its answer, See Rule 8(c), F.R.Civ.Pro., precluded it from later raising bankruptcy as a bar to recovery. However, Plaintiffs concede, as they must, that bankruptcy was alleged as a bar to recovery in the jointly drafted Pretrial Order dated April 17, 1978, and that the Union asserted that Brummett's claims passed to and vested in the bankruptcy trustee upon his filing a bankruptcy petition at a pre-trial hearing on April 19, 1978
 Since the issue was raised at the pretrial and included in the jointly drafted pretrial order, any suggestion of preclusion here is clearly meritless. See Rule 16, F.R.Civ.Pro. (providing that the pretrial "controls the subsequent course of the action"); Case v. Abrams, 352 F.2d 193 (10th Cir. 1965) ("The pre-trial order supersedes the pleadings and becomes the governing pattern of the lawsuit"). See also, Low v. Davidson Mg. Co., 113 F.2d 364 (7th Cir. 1940).
 
 
 [18]
 While the court's specific concern in that case was with § 70a(5), we believe it set down principles of general applicability
 
 
 [19]
 We note that while section 70a provides for the divestment of causes of action arising upon injury To property, the section 303 provides a cause of action in cases of injury In business or property. The Supreme Court has pointed out that there is a very fine line to be drawn
 . . . there is a sufficiently clear distinction between injuries to property and "injured in his business or property," the latter being the language of the act of Congress. A man is injured in his property when his property is diminished. He would not be said to have suffered an injury to his property unless the harm fell upon some object more definite and less ideal than his total wealth. A trade-mark, or a trade-name, or a title, is property, and is regarded as an object capable of injury in various ways. But when a man is made poorer by an extravagant bill we do not regard his wealth as a unity, or the tort, if there is one, as directed against that unity as an object. We do not go behind the person of the sufferer. We say that he has been defrauded or subjected to duress, or whatever it may be, and stop there.
 Chattanooga Foundry and Pipe Works v. City of Atlanta, 203 U.S. 390, 398-399, 27 S.Ct. 65, 67, 51 L.Ed. 241 (1906) (emphasis added). See United Mine Workers of America v. Meadow Creek Coal Co., 263 F.2d 52, 61-63 (6th Cir.), Cert. denied, 359 U.S. 1013, 79 S.Ct. 1149, 3 L.Ed.2d 1038 (1959).
 In light of the purposes served by the Bankruptcy Act, we think that the "To property" language of § 70a is broad enough to encompass the "In business or property," language contained in Section 303. For as the court stated in Gochenour v. Cleveland Terminal Building Co., 118 F.2d 89 (6th Cir. 1941);
 The object of the Bankruptcy Act is to benefit creditors by making all the pecuniary means and property of the bankrupt available to their payment and in furtherance of this object, there passes to the trustee, not only what in strictness may be called the property of the bankrupt, but also those rights of action to which he was entitled for the purpose of recovering real or personal property, or damages respecting that which has been unlawfully diminished in value, withheld or taken from him.
 118 F.2d at 93. See Moore v. Slomin, 426 F.Supp. 524, 527 (D.Conn.), Aff'd, 562 F.2d 38 (2d Cir. 1977); Gerr v. Schering Corporation, 256 F.Supp. 572, 574 (S.D.N.Y.1966). See also Burkett v. Shell Oil Company, 448 F.2d 59 (5th Cir. 1971); Kreshtool v. International Longshoremen's Ass'n, 242 F.Supp. 551 (D.Del.1965) (Antitrust case otherwise on point).
 
 
 [20]
 Bankruptcy Rule 515 provides:
 Rule 515 Reopening Cases
 A case may be reopened on application by the bankrupt or other person to administer assets, to accord relief to the bankrupt, or for other good cause. The application shall be filed with the clerk of the district court having custody of the papers in the case. The case shall be referred forthwith for action on the application and for further proceedings therein.
 
 
 [21]
 The court stated:
 Defendants first argue that the court's order granting their motion to dismiss is not a final order. We disagree because the Union has appealed from the district court's dismissal of Count I, the only remaining count in the case. . . . Therefore, the only question before us if the facial validity of the CTA rules.
 538 F.2d at 1266.
 
 
 [22]
 As explained in Moore's Federal Practice, Supra :
 The language of both paragraphs (1) and (2) of Rule 41(a) speaks of the dismissal of an action. Consequently, some problem arises where a voluntary dismissal is sought of fewer than all the claims or all the parties involved in the action, i. e., a fragment of the action. The problem, though, is more technical than substantial.
 Where a plaintiff desires to eliminate an issue, or one or more but less than all of several claims, but without dismissing as to any of the defendants the problem may technically be regarded as one of amendment that is governed by Rule 15. Under Rule 15(a) plaintiff may amend his complaint once as a matter of course at any time before the answer is served. Otherwise he may amend his complaint only by leave of court or by written consent of the defendant. Where he seeks leave of court he invokes the district court's discretion and while leave is to be freely given when justice so requires, the court may deny leave, or impose conditions upon leave to amend to eliminate an issue or claims as it would upon a voluntary dismissal under Rule 41(a)(2).
 But since the district court's discretion is involved when leave of court is required, whether plaintiff's motion is made under Rule 15 or under Rule 41(a) (2), the choice of rules is largely a technical one. But technically speaking, subdivision (a) of Rule 41 does not include dismissal of less than all the claims against any particular defendant.
 
 
 [5]
 Moore's Federal Practice P 41.06-1 at 41-92-41-93 (footnotes omitted)