William W. ROWLAND, et al., Plaintiffs,

v.

The MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, et al., Defendants.

No. C-1-87-0001.

United States District Court, S.D. Ohio, W.D.

June 23, 1988.

William H. Blessing, Cincinnati, Ohio, for plaintiffs.

Timothy P. Heather, Cincinnati, Ohio, Donald S. Fletcher, San Bruno, Cal., for Transworld Assur. Co.

Timothy S. Black, Cincinnati, Ohio, for Mutual of New York (Mony).

## ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

SPIEGEL, District Judge.

Before the Court are the motions for summary judgment of defendant Trans World Assurance Company (Trans World) (doc. 44) and of defendant The Mutual Life Insurance Company of New York (Mony) (doc. 46). Plaintiff has opposed both motions (docs. 53 and 54). Defendant Trans World has replied (doc. 55). A hearing before the Court was held on these motions on May 6, 1988. We have considered the arguments made by counsel and reviewed all the documents provided by the parties. We conclude, for the reasons set forth below, that defendants' motions should be denied.

### Standard of Review

In considering a motion for summary judgment, the narrow question we must decide is whether there is "no genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether there are issues to be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). The moving party "has the burden of showing *conclusively* that there exists no genuine issue as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.) (emphasis original), *cert. denied*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). And, "while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently." *Id.* at 63. "[T]he District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogatories, and admissions' properly on file and thus properly before [the] court." *Id.*, quoting Rule 56(c), Fed.R.Civ.P. Summary judgment "must be used only with extreme

caution for it operates to deny a litigant his day in court." *Id.* We are further guided by the Supreme Court's recent elaboration of this standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) as follows:

... the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial ...

477 U.S. at 322, 106 S.Ct. at 2552.

### Background

Plaintiffs' amended complaint alleges that defendants violated the following:

Count One—Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.;*

Count Two—Ohio Consumer Sales Practice Act, § 1345.03;

Count Three—Common Law Fraud;

Count Four—Breach of Contract;

Count Five—Breach of Fiduciary Duty; and

Count Six—Conspiracy.

The alleged facts of the case are rather complex. They have been set forth in relevant part in the complaint as follows:

11. In about 1976, Fletcher began planning and carrying out this scheme to sell life insurance by providing guarantees of freedom from taxes to the purchasers. At that time (and up to June, 1980), Fletcher was an agent for New York Life Insurance Co. Fletcher, and others acting in concert with him, formed and used the Fletcher–McKelvie Group and, later, Fletcher Insurance Associates as the vehicles for their sales efforts. The targets of their investment scheme were owners of home-based businesses. Fletcher and his co-conspirators traveled around the United States, holding so-called 'tax seminars' in numerous cities, including Cincinnati, Middletown, Dayton, Houston, Detroit, San Antonio, and San Diego, and San Francisco. At these seminars, Fletcher and his co-conspira-

tors delivered presentations guaranteeing owners of home-based businesses that their tax liabilities would lawfully be reduced to zero if the targets (the home-based business owners) would invest in the life insurance/tax guarantee plan that was being sold.

12. In 1980 and 1981, Defendant Fletcher and others held several 'seminars' in Cincinnati, Dayton and Middletown, Ohio. By the time, Evelyn D. Johnson had agreed with the Defendants to collaborate in the scheme. Acting on behalf of themselves and the other Defendants, Johnson and Fletcher made representations to Plaintiffs and others that, by buying into Defendants life insurance/tax guarantee programs, the income tax liabilities of Plaintiffs and other similarly situated could lawfully be reduced to zero.

13. By June 1980, Fletcher and certain of his co-conspirators had been terminated as New York Life agents and were representing MONY. Acting on behalf of MONY, Fletcher and Johnson urged and induced Plaintiffs to buy into the tax/insurance program, promising freedom from all income tax liability. In return for this freedom-from taxes guarantee, Plaintiffs were required to send one-half of their previous year's tax liability per year to MONY to purchase insurance policies.

14. In late 1980, in Evelyn Johnson's home, Plaintiffs succumbed to Fletcher's and Johnson's urgings and agreed to invest in the life insurance/tax guarantee deal. Acting as agents for MONY, Fletcher and Johnson prepared and had Plaintiffs sign the MONY application and received Plaintiffs' initial payment. MONY accepted and retained the monies that Plaintiffs provided these agents in connection with the investment. Plaintiffs continued to pay MONY monthly per the obligation under their investment contract until June of 1984.

15. Plaintiffs relied upon the representations and advice made to them by Fletcher, Johnson and Fletcher Insurance Associates and upon their status as authorized agents of MONY in entering into the tax/insurance program.

16. Plaintiffs continued to pay MONY until June 1984, when, on the advice of Fletcher, Plaintiffs terminated their life insurance policies with MONY and purchased policies with TRANS WORLD. Defendants Fletcher and Johnson, who were authorized agents of TRANS WORLD, made the same representations and tax guarantees to Plaintiffs in connection with the TRANS WORLD policies that Plaintiffs bought.

17. Plaintiffs accepted as true and *relied* upon all of the representations and guarantees provided by these MONY and TRANS WORLD agents. Plaintiffs turned over all their tax matters for the years 1980, 1981, 1982, 1983 and 1984 to these agents of MONY and TRANS WORLD. (Emphasis added.)

18. These MONY and TRANS WORLD agents (Fletcher, *et al*) took charge and control of the Plaintiffs' tax returns for the years 1980–84 and had them prepared, making wholly false, fraudulent, unjustified and illegal representations on those returns, all the while assuring Plaintiffs that they would take care of their return and lawfully reduce their tax liability to zero. Plaintiffs believed, placed trust and confidence in, and relied upon those representations and permitted these Defendants to complete their tax returns. These agents told Plaintiffs that they could not sign the tax returns as preparers in order to preserve Plaintiffs' constitutional rights.

19. The Internal Revenue Services subsequently has audited Plaintiffs' tax returns for 1980–1983 and assessed a deficiency for Federal income tax in the amounts of $10,894.00 for 1980, $31,004.00 for 1981, and amounts yet uncertain for the years 1982 and 1983. Interest and penalties on these amounts are continuing.

## Discussion

Defendants each move for summary judgment on all counts largely on the same grounds. Before addressing the substantive issues raised by defendants, we first

turn to a threshold procedural matter raised by defendant Mony and incorporated by defendant Trans World at the hearing on the motions.

*Real Party In Interest*

Defendants first argue that at the time plaintiffs filed the instant action they were not the real party in interest in this law suit and that the case must be dismissed. In essence, defendants claim that when the plaintiffs instituted this action their proceeding in bankruptcy court was pending. Plaintiffs had not listed this cause of action at the commencement of the bankruptcy proceeding, at which time defendants argue plaintiffs admittedly knew of the alleged fraud. Defendants contend that the trustee in bankruptcy would have been the proper party. Defendants also argue that plaintiffs' effort to cure this problem by recently filing in this case an entry of abandonment from the bankruptcy court is ineffective because the case had been closed and the entry indicating abandonment does not indicate that the case was properly reopened prior to the entry of abandonment. Finally, defendants contend that, even if it is assumed that the entry of abandonment was procedurally sufficient, we should not find relation back under 17(a) of the Federal Rules of Civil Procedure because there is no appropriate basis on which to do so, i.e., at the time the suit was brought, there was no excusable reason for the failure to name the correct party.

Section 541(a) of the federal bankruptcy code, 11 U.S.C. § 541(a) provides that the commencement of a case under sections 301, 302, or 303 of this title creates an estate. Such estate is comprised of certain listed property whereever located and by whomever held. Subsection (a)1 provides that, with exceptions, that the property includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *Collier on Bankruptcy* 15th ed. points out in ¶ 541.02 that the concept of the vesting of title to the debtor's property in the trustee has been eliminated under the bankruptcy code. This is a change from the traditional view of section 70 in the former bankruptcy act. The text writer states:

Unlike section 70(a) of the Act, no provision is made under the Code for the vesting of title in the trustee. Section 541 of the Code provides that the commencement of a case creates an estate consisting of, most importantly, all legal and equitable interest of the debtor in property at the time of the commencement of the case. Title is an interest that vests in the estate. Thereafter, although title does not vest in the trustee himself the trustee has authority to dispose of the property comprising the estate pursuant to section 323(a) and 363(b).

Although the trustee is not vested with the title of the debtor under the Code, the trustee is given full authority to represent the estate and to dispose of the debtor's property which comprises the estate.

Section 554 of the Code covers abandonment of the property of the estate. The former Bankruptcy Act was silent about the general right of the trustee to abandon and made no provision as to what constituted abandonment or what the trustee was required to do to disclaim property. The procedure for abandonment of property is now governed by a section 554, as mentioned, and rule 6007 as amended by the 1987 amendments to the bankruptcy rules. Under section 541 the trustee no longer takes title to the debtor's property, and, upon abandonment under section 554, the trustee is simply divested of control of the property because it is no longer a part of the estate. Thus, abandonment constitutes a divestiture of all interests in property that were property of the estate. *See Collier* 15th ed. § 554.02.

■ Certain property is considered to be abandoned by operation of law. The text writer notes at ¶ 554.05:

The property of the estate that is burdensome or is of inconsequential value and benefit may be abandoned on application of the trustee or any other party in interest under section 554(a) or (b). When there is no court order directing abandonment, the language of subsection (c)

deems abandoned to the debtor any scheduled property of the estate that is unadministered at the close of the estate.

But abandonment presupposes knowledge. As a general rule, there can be no abandonment by mere operation of law of property that was not listed in the debtor's schedule or otherwise disclosed to the creditors.

■ Examination of the entry authorizing abandonment by Rowland's bankruptcy trustee, Exhibit A to plaintiff's memo in opposition to Mony's motion for summary judgment, discloses that the bankruptcy judge authorized the abandonment of the cause of action by the trustee upon the motion of the trustee after notice to all creditors of the motion to abandon, with notice to file objection within twenty days, and no objections were filed. Grounds for the abandonment as noted by the bankruptcy judge were due to the cost of proceeding and expenses and fees associated with the suit being burdensome to the estate. We conclude that Rowland's cause of action was properly abandoned by his trustee in bankruptcy.

Rowland argues that, under *Mason v. Commissioner of Internal Revenue*, 646 F.2d 1309 (9th Cir.1980), he technically continued to be the owner of the cause of action against Mony, et al., even though control over it passed by operation of law under 11 U.S.C. § 541 to his trustee. In *Mason*, the Court found that "When the court grants a trustee's petition to abandon property in a bankruptcy's estate, any title that was vested in the trustee is extinguished, and the title revests to the bankrupt, nunc pro tunc." *Mason*, 646 F.2d at 1310. The facts of that case were different, however, and there was no question of a failure to list property as there is in the instant case. Defendant directs our attention to the Sixth Circuit case of *Management Investors v. United Mine Workers of America*, 610 F.2d 384 (6th Cir.1979).

> In some cases, a bankruptcy trustee chooses to formally abandon a claim. In such cases, the cause of action revests in the bankrupt, and he can then bring suit. In this case, however, Brummett never brought these claims to the trustee's at-

tention. Thus, it cannot be said that they revested in him because the trustee abandoned them.... Thus Brummet cannot now, after having been discharged from bankruptcy, assert this cause of action.

*Management Investors*, 610 F.2d at 392.

■ The Sixth Circuit has not ruled on this precise point. Thus, under the changes in the legal consequences occasioned by the new Bankruptcy Code outlined above, it cannot be stated categorically that Rowland was not the real party-in-interest at the time of the filing of the litigation. However, the Code provisions are based on the same reasoning as Section 70(a) of the Act, with the trustee given full authority to depose of all property which constitutes the estate. *Collier*, 15 ed. § 541.02. And, it may well be that policy considerations would foreclose such a finding. Even if we assume, plaintiffs were not the real party-in-interest at the time of filing, we find that he was the real party-in-interest as of May 3, 1988 by the abandonment of the cause of action to him by the trustee with the approval of the bankruptcy court.

■ The question that remains is whether Rowland is entitled to the benefits of Rule 17(a), Fed.R.Civ.P. which provides in part:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Volume 6 of Wright & Miller, *Federal Practice and Procedure* § 1555 discusses dismissal and relation back. The text writer points out that the foregoing quotation is designed to avoid forfeiture and injustice when an understandable mistake has been made in selecting a party in whose name the action should be brought. Thus, a correction in party is permitted even after the

statute of limitations governing the action has run:

> This provision reflects a general policy of the draftsman of the Federal Rules that the choice of a party at the pleading stage ought not have to be made at the risk of final dismissal of the action should it later appear that there has been an error. In this respect the rule is consistent with the liberal relation back provision in Rule 15(c). Indeed Rule 15(c) has been used in conjunction with Rule 17(a) to enable an amendment substituting the real party-in-interest to relate back to the time the original action was filed. The same result could have been reached solely on the basis of the last sentence of Rule 17(a).

*Id.*

This is not a case where the name of a fictitious party was utilized in the hope that at a later time the identity of the real party-in-interest could be determined. Since it was the intention of the rule makers that substitution and relation back should be permitted where necessary to avoid an injustice, we conclude that it would be an injustice to the plaintiffs if they were not permitted to avail themselves of the benefits of the relation back of Rule 17(a). Consequently, we conclude that the bankruptcy proceeding in this case is no bar to the plaintiffs' action against defendants and that the relation back provision of the last sentence of Rule 17(a) permits the filing date for the purpose of this action of the plaintiffs to be the date this suit was filed—January 1987.

*Breach of Contract*

■ Having found that plaintiffs have standing to pursue their claims, we turn to the balance of defendants' arguments for summary judgment. Defendant Mony argues that the contract outlined by plaintiffs in Count IV to the effect that by buying the tax/insurance program plaintiffs were promised no tax liability or that Mony would pay any amount owed is unenforceable. It is true that as a general matter contracts which contravene a recognized public policy are void. *Davis v. Parratt,* 668 F.2d 451 (6th Cir.1982). And, the Sixth Circuit has upheld the dismissal of a breach of contract action brought by a member of a tax protest organization for failure of the organization to pay family and defense expenses of the member in the event of incarceration for tax violations as it had promised. *Id.* The Court held the contract unenforceable in that it:

> encouraged violations of the federal tax laws through 'guarantees' to pay defense and family expenses during a member's imprisonment for tax violations ... while the membership agreement does not expressly urge members to violate the tax laws, it does provide in part that 'all client members are encouraged to refuse payment of all unconstitutional taxes.'

*Id.* at 451. However, plaintiff argues that the facts of this case may support a finding of legitimate efforts to avoid taxes rather than illegal evasion. We are of the opinion that at this stage of the proceedings this issue, avoidance versus evasion, presents a factual question for the jury. Accordingly, we decline to find that the contract is unenforceable.

■ Both defendants Mony and Trans World argue that each contract between the parties was expressly limited to the terms in the insurance contract and there is no evidence that defendants knew, approved, or ratified the acts of Fletcher and others. Plaintiffs argue that defendants either knew, approved, or ratified the acts and representations of their agents. We conclude that plaintiff has come forward with sufficient evidence to create questions of fact concerning whether Fletcher was an agent or independent contractor and whether defendants knew of and approved or ratified this scheme. (*See* plaintiff's Exh. A and B, attached to their memorandum in opposition to Trans World's motion; and Attachments H and F to plaintiff's memorandum in opposition to defendant Mony's motion.) We find, too, that there is a question of fact concerning whether plaintiffs relied on defendant and whether the alleged reliance was reasonable. We find William Rowland's deposition read as a whole at least raises a question of fact concerning his reliance on the insurance

companies. (Rowland's dep. at 112–116.) It may well be, however, that defendants can show that relying on this scheme for the purpose of paying no taxes was unreasonable.[1] We conclude, therefore, that both defendants' motions for summary judgment on plaintiffs' breach of contract claims must be denied.

### RICO Claim

 Next, we consider the argument of defendants Mony and Trans World that plaintiffs' RICO count must be dismissed on the theory that *respondeat superior* does not apply in RICO claims. We are of the opinion that the doctrine is applicable to RICO claims except where the application of the doctrine would transform the alleged RICO "enterprise" into a liable "person" through the acts of the enterprise's employees. *Petro–Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349 (3d Cir. 1987). We have reviewed the reasoning of the Court in *Rush v. Oppenheimer & Co., Inc.*, 628 F.Supp. 1188 (S.D.N.Y.1985) and do not find it in material conflict with *Petro–Tech*. If we correctly understand plaintiffs' RICO claim, they are not merely alleging that defendants' employees committed fraud while acting within the scope of their authority. This was the case in *Rush* and other cases relied upon by defendants. (*See* Mony's motion to dismiss (doc. 24) at 2–4.) Plaintiff appears to argue that it has not alleged that Mony or Trans World are enterprises but rather that the enterprise in this case is the association between the defendants and Fletcher and his associates. If this is the case, then the defendants are already persons and not the enterprise; thus, no "transformance" of the kind contemplated by *Petro–Tech* occurs. However, granting the facts to be as plaintiff argues, we are unclear on how *respondeat superior* comes into play at all in plaintiff's case. In other words, if plaintiff argues that defendants ratified or authorized the alleged fraudulent scheme, they would be directly liable. If the evidence in this case should develop at trial on the lines that Fletcher and others were acting with apparent authority but that the defendants were otherwise without knowledge of the scheme, then the use of *respondeat superior* might well be inappropriate. Accordingly, we deny this aspect defendants' motion at this time, without prejudice to its being reasserted at trial after the evidence has been adduced on this matter.

In conclusion, we find questions of material fact preclude our granting summary judgment in defendants' favor on plaintiff's breach of contract and RICO claims, Counts Four and One respectively. And, because the essential elements of these causes serve as the basis for the remaining Counts Two, Three, Five and Six, we conclude summary judgment is inappropriate on these counts as well. Accordingly, defendants' motions for summary judgment (docs. 44 and 46) are hereby denied as to all counts, at this time without prejudice, of course to defendants reasserting their contentions at trial.

SO ORDERED.

---

1. If the evidence developed at trial supports a finding that defendants were proposing a tax evasion scheme and, further, that plaintiffs were aware of it, not only would the element of reliance fail, but we are of the opinion that in all probability all plaintiffs' claims would fail on such a showing as well.