**Francine DONATO, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE CO., Defendant.**

**No. C–98–02151 CW.**

United States District Court, N.D. California, Oakland Division.

Jan. 12, 1999.

**420**

Bruce J. Highman, Highman Highman & Ball, San Francisco, CA, Louis A. Highman, Highman Highman & Ball, San Francisco, CA, for Francine Donato, plaintiff.

Mark W. Atkinson, Paul Hastings Janofsky & Walker, Los Angeles, CA, Shannon S. Fallick, Paul Hastings Janofsky & Walker, San Francisco, CA, for Metropolitan Life Insurance Co., defendant.

Martha G. Bronitsky, Hayward, CA, Chapter 13 Standing Trustee.

## ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND FOR REFERRAL TO BANKRUPTCY COURT

WILKEN, District Judge.

Defendant Metropolitan Life Insurance Company (MetLife) moves for judgment on the pleadings or, in the alternative, for referral of this action to the bankruptcy court. Plaintiff Francine Donato opposes the motions. Having considered all of the papers filed by the parties, the Court DENIES the motions.

## BACKGROUND

On October 2, 1997, Donato, using the name Francesca Ferrer, filed a voluntary petition for Chapter 13 bankruptcy. At that time Donato was employed by MetLife. On October 6, 1997, MetLife terminated Donato's employment. On October 31, 1997, Donato filed a Summary of Schedules and Statement of Financial Affairs in her bankruptcy case. MetLife was incorrectly listed as Donato's employer.

On December 11, 1997, Donato filed an administrative complaint against MetLife with the California Department of Fair Employment and Housing (DFEH) alleging wrongful termination, discrimination, and related claims. On December 16, 1997, Donato received a right to sue notice from the DFEH informing her that she could proceed with a private lawsuit against MetLife. On March 16, 1998, Donato filed an administrative complaint against MetLife with the United States Equal Employment Opportunity Commission. On March 20, 1998, Donato filed Amended Schedules I and J with the bankruptcy court, updating her income and expense statements. Donato did not list her claims against MetLife on Amended Schedules I or J or amend any other schedules in her bankruptcy filings to list these claims. On Amended Schedule I, Donato incorrectly identified MetLife as her present employer. On March 31, 1998, the bankruptcy court confirmed Donato's Chapter 13 plan. On May 26, 1998, Donato filed the instant complaint against MetLife alleging causes of action for violation of the Family and Medical Leave Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, Title VII, 42 U.S.C. § 1981, employment discrimination, employment harassment and retaliation, breach of an implied employment contract, and breach of the covenant of good faith and fair dealing.

## DISCUSSION

### I. Judicial Estoppel

MetLife argues that Donato's failure to disclose her claims against it as an asset of her bankruptcy estate provides an appropriate basis for the imposition of judicial estoppel against these claims.

 A voluntary bankruptcy case is commenced by filing a petition with the bankruptcy court. Fed.R.Bankr.P. 1002(a). A bankruptcy petition must be accompanied by schedules of the bankruptcy debtor's assets and liabilities, current income and expenses, and a statement of financial affairs. Fed.R.Bankr.P. 1007(b)(1). The bankruptcy estate includes all legal or equitable interests of the debtor as of the commencement of the case. 11 U.S.C. § 541(a)(2). In a Chapter 13 case, the estate also includes property acquired by the debtor after the commencement of the case. 11 U.S.C. § 1306(a)(1).

 In a Chapter 13 case, the property of the estate includes causes of action that arise after the commencement of the case and until the case is closed, dismissed or converted. *See In re Fleet,* 53 B.R. 833, 838 (Bankr.E.D.Pa.1985). The debtor must disclose any litigation likely to arise in a non-bankruptcy context. *See Hay v. First Interstate Bank of Kalispell, N.A.,* 978 F.2d 555, 557 (9th Cir.1992). If the debtor is not knowledgeable of all the facts giving rise to a civil action before the filing of his or her petition and financial schedules, the debtor must amend those schedules when he or she becomes aware of the existence of the action because it is an asset of the bankruptcy estate. *See id.;* Fed.R.Bankr.P. 1009(a) (schedules may be amended before the case is closed).

 "Judicial estoppel, sometimes known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position," either in the same action or in different actions. *Rissetto v. Plumbers and Steamfitters Local 343,* 94 F.3d 597, 600, 605 (9th Cir.1996). It is an equitable doctrine invoked by the court at its discretion, *see Morris v. California,* 966 F.2d 448, 453 (9th Cir.1991), *cert. denied,* 506 U.S. 831, 113 S.Ct. 96, 121 L.Ed.2d 57 (1992), and intended to protect the integrity of the judicial process by preventing a litigant from "playing fast and loose with the courts," *see Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir.1990) (citation and internal quotation marks omitted), *cert. denied,* 501 U.S. 1260, 111 S.Ct. 2915, 115 L.Ed.2d 1078 (1991). The Ninth Circuit has adopted the majority rule that judicial estoppel applies in subsequent litigation only if the court in the prior litigation adopted the inconsistent assertion. *See Interstate Fire & Cas. Co. v. Underwriters at Lloyd's,* 139 F.3d 1234, 1239 (9th Cir. 1998). The Ninth Circuit has rejected the minority rule that extends judicial estoppel to cases in which the court in the first proceeding did not adopt the inconsistent assertion. *See Milgard Tempering, Inc. v. Selas Corp. of America,* 902 F.2d 703, 716 (9th Cir.1990); (explaining minority and majority rules); *Masayesva For and On Behalf of Hopi Indian Tribe v. Hale,* 118 F.3d 1371, 1382 (9th Cir.1997) (adopting majority rule), *cert. denied sub nom. Hale v. Secakuku,* —— U.S. ——, 118 S.Ct. 1048, 140 L.Ed.2d 112 (1998). Judicial estoppel is inapplicable when a party's prior position was based on inadvertence or mistake. *See Helfand v. Gerson,* 105 F.3d 530, 536 (9th Cir.1997).

Under the Bankruptcy Code, Donato should have disclosed her action against MetLife in her bankruptcy schedules as an asset of her estate. Donato does not dispute this. She has filed a declaration in which she states that her failure to disclose her lawsuit against MetLife in her bankruptcy schedules was the result of inadvertence and was not intentional wrongdoing or part of a scheme to mislead the court. Specifically, Donato states that when she saw her bankruptcy attorney on October 2, 1997, the day she filed her bankruptcy petition, a paralegal who was employed by her attorney orally asked her questions regarding her financial situation. She does not remember if he asked her if she had any claims. However, she states that even if he had asked her this question, she would have replied that she did not because at that time she was still employed by MetLife and had no plans to sue MetLife. The

paralegal asked Donato to sign some blank bankruptcy schedules and some single page declarations. He informed Donato that someone in the law firm would fill out the schedules based upon the information she had given him. Donato signed these forms as requested. The paralegal also told her that, if any of the information changed, she should inform the law office of the change. Donato states that she did not review the bankruptcy schedules that her attorney completed. She also states that after she was terminated by MetLife on October 6, 1997, she called her bankruptcy attorney and left a message on his voice mail informing him of her termination.

Donato further states that she did not make a decision to file a lawsuit against MetLife until December, 1997. She states that before MetLife's motion for judgment on the pleadings, she did not inform her bankruptcy attorney of her claim against MetLife. She states that she did not do so because she did not and presently does not remember if the paralegal asked her if she had any claims or lawsuits. She states that if she had remembered the paralegal asking her about lawsuits, she would have called her bankruptcy attorney on or about December, 1997, to inform him of her decision to sue MetLife.

Donato further states that in early 1998 she amended her bankruptcy schedules I and J to reflect additional income she was receiving from renting out a room in her home. Donato acknowledges that there are several errors on schedules I and J. Amended Schedule I incorrectly indicates that Donato was employed by MetLife and that the rental income she was receiving was $850 rather than the true amount of $1,300 per month. Donato states that she did not review the amended schedules as prepared by her bankruptcy attorney and, therefore, did not notice these errors. She states that had she read the documents and noticed the errors, she would have had her bankruptcy attorney correct them.

Donato attaches as an exhibit to her declaration a copy of an Amendment to Schedule B in her bankruptcy case which she has executed and served and which she states she will immediately file with the bankruptcy court.[1] In this amendment, Donato discloses her lawsuit against MetLife. She also explains that she filed her bankruptcy case under her married name of Francesca Ferrer because title to her house and the mortgage on her house is in that name. She filed her lawsuit against MetLife under her maiden name of Donato because she used that name with MetLife. Furthermore, Donato explains that although Francesca is her legal name, she is commonly called Francine and that is what she was called at MetLife.

In response to Donato's testimony that she did not intentionally conceal her lawsuit, MetLife asserts that judicial estoppel is still warranted because "Plaintiff's bankruptcy file reflects not just one inadvertent failure to disclose Plaintiff's claims, but multiple misrepresentations to the bankruptcy court which are too blatant and numerous to be mere coincidence." Reply at 7. MetLife contends that there are seven instances in which Donato misled, or concealed material information from, the bankruptcy court. Four of the seven instances refer to Donato's failure to disclose her lawsuit against MetLife. Two of the seven instances refer to Donato's filing her bankruptcy case and the instant case under different names. One of the seven instances refers to the fact that MetLife was listed as Donato's employer several months after she had been terminated.

MetLife's seven instances can be condensed to three actions taken by Donato: (1) the failure to disclose her lawsuit; (2) the incorrect statement that Donato was employed by MetLife after she had been terminated; and, (3) Donato's use of her maiden name in this case and her married name in her bankruptcy case. MetLife characterizes this conduct as "a pattern of 'representations . . . so inconsistent that they amount to an affront to the court.'" Reply at 8.

1. This declaration was executed during or immediately before the Thanksgiving weekend when the bankruptcy court was closed.

As noted above, the Ninth Circuit has adopted the rule that judicial estoppel applies only if the court in the first proceeding has relied on the party's previous inconsistent statements. *See Interstate Fire,* 139 F.3d at 1239. MetLife does not show that the bankruptcy court relied upon Donato's three incorrect statements or omissions. A review of the schedules Donato filed in her bankruptcy case [2] indicates it was unlikely that the bankruptcy court, the bankruptcy trustee or Donato's creditors relied upon these statements or omissions.

Donato's bankruptcy schedules indicate that she has three secured creditors and no unsecured creditors. *See* Schedule D (Creditors Holding Secured Claims); Schedule E (Creditors Holding Unsecured Priority Claims); and, Schedule F (Creditors Holding Unsecured Nonpriority Claims). The three secured creditors hold security interests in Donato's residence. Donato's first amended Chapter 13 plan, which was confirmed by the bankruptcy court on March 31, 1998, requires that Donato remain current on payments to these three secured creditors, repay all arrearages she owes to two of the creditors and repay any unsecured claims 100 cents on the dollar. Under Donato's confirmed plan, no creditor is required to accept less than 100 per cent repayment of its claim.

At the hearing confirming Donato's plan, therefore, Donato's failure to disclose her lawsuit against MetLife could not have been relied upon by the bankruptcy court, the bankruptcy trustee or Donato's creditors because even had she disclosed it, no creditor would have been able to receive more than 100 percent of its claim. For the same reason, it is unlikely that Donato filed her bankruptcy case and this case under two different names as part of an effort to conceal this case from the bankruptcy court; Donato had nothing to gain by concealing the instant case from her creditors or the bankruptcy court because when she filed this case she had already agreed to repay all her creditors one hundred percent of the amount of their claims. Finally, it is unlikely that the incor-

rect listing of MetLife as Donato's employer after she was terminated was relevant to the bankruptcy court's decision to confirm Donato's plan.

MetLife contends that under *Hay v. First Interstate* a debtor who fails to disclose a potential claim on her bankruptcy schedules must be judicially estopped from litigating that case in a nonbankruptcy forum. In *Hay,* the plaintiff filed for Chapter 11 bankruptcy protection immediately after a loan application was rejected by its long-time lender, First Interstate Bank. *Hay,* 978 F.2d at 556. During the course of the bankruptcy, the plaintiff and First Interstate negotiated a settlement of First Interstate's secured claim, which settlement was approved by the bankruptcy court. *Id.* Four months later the bankruptcy court approved the plaintiff's second amended plan and the case was closed three months thereafter. *Id.* During the course of the bankruptcy, the plaintiff became aware of facts that led it to the conclusion that it had been taken advantage of by First Interstate. *Id.* One year after the close of the plaintiff's bankruptcy case, it filed suit in district court against First Interstate and two other parties alleged to have conspired with First Interstate prior to or during the pendency of the plaintiff's bankruptcy. *Id.* at 557. The court granted summary judgment to the defendants on the ground that when the plaintiff became aware of the facts that led it to conclude it might have a claim against First Interstate, it was required to amend its schedules to disclose the asset to the bankruptcy court. *Id.*

*Hay* is distinguishable from this case. In *Hay,* the court judicially estopped the plaintiff from proceeding with a lawsuit against one of the major creditors in its Chapter 11 bankruptcy case. The plaintiff and the major creditor had negotiated a separate settlement of the creditor's claim which was specifically approved by the bankruptcy court. Had the plaintiff disclosed the lawsuit in its bankruptcy case, it would have affected its negotiated settlement with the major credi-

---

2. MetLife has submitted a copy of Donato's bankruptcy case file. The Court grants MetLife's request to take judicial notice of it.

tor. Here, MetLife is not a creditor in Donato's bankruptcy case.

Further, in *Hay,* the plan confirmed by the bankruptcy court did not provide that other creditors receive 100 per cent of their claims. *Id.* at 556. Had the lawsuit been disclosed, the plan no doubt would have provided that the creditors receive a certain portion of any damages recovered by the plaintiff. This situation is unlike the plan confirmed by the court in Donato's bankruptcy case, under which the creditors could not receive a greater amount of their claims even had her lawsuit against MetLife been disclosed.

Other cases cited by MetLife can be similarly distinguished. In *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 417 (3rd Cir.1988), the court judicially estopped the plaintiff from proceeding with a lawsuit against United Jersey Bank, one of its major creditors in its Chapter 11 bankruptcy case. The court explained that nondisclosure of the lawsuit not only "failed to alert the creditors to the possible financial benefits enuring to them upon the successful prosecution of the claim," but also may have affected United Jersey Bank's decision to enter into the stipulated settlement with the plaintiff and to vote for confirmation of the plan. *Id.* at 418. In *Payless Wholesale Distribs., Inc. v. Alberto Culver,* 989 F.2d 570, 571 (1st Cir.1993), the plaintiff had failed to disclose, either in its Chapter 11 schedules or its disclosure statement, twenty causes of action for which it was seeking from $5 to $150 million in damages per cause. *Id.* The plaintiff alleged that its bankruptcy was a direct result of the conspiratorial acts of the defendants. *Id.* At least one of the defendants was a creditor in the plaintiff's bankruptcy case and the other creditors had received less than 100 per cent of their claims.

*Id.* The court explained that this was a fraud on the court because the plaintiff had concealed its claims in its bankruptcy case, gotten rid of its creditors cheaply, and started over with a bundle of rights it had obtained as a result of its bankruptcy discharge. *Id.*

In each of these cases, unlike the present case, the plaintiff's failure to disclose its causes of action in its bankruptcy case deprived its creditors of their proper share of the assets of the estate and would have been a windfall to the plaintiff had the court allowed the litigation to proceed. All the other cases MetLife cites are distinguishable on the same ground because they involve undisclosed claims against one of the major creditors in the plaintiff's bankruptcy case. *See Welsh v. Quabbin Timber, Inc.,* 199 B.R. 224, 229 (D.Mass.1996) (plaintiff estopped from proceeding with action against bank which was a creditor in his bankruptcy case); *In re H.R.P. Auto Center, Inc.,* 130 B.R. 247, 254 (Bankr.N.D.Ohio 1991) (Chapter 11 debtor estopped from asserting undisclosed counterclaim against major creditor); *In re Hoffman,* 99 B.R. 929, 935–36 (N.D.Iowa 1989) (estopping lender liability suit against one of plaintiff's primary bankruptcy creditors).[3]

Here, Donato will not receive a windfall if the Court allows her to proceed with her case, because her plan provides that all her creditors will receive 100 per cent of the amount of their claims. Under the circumstances of this case, if the Court were to grant summary judgment to MetLife on the basis of judicial estoppel, MetLife would receive a windfall. Accordingly, MetLife's motion for judgment on the pleadings based on judicial estoppel is DENIED.

---

**3.** MetLife cites *Management Investors v. United Mine Workers of Am.,* 610 F.2d 384, 391–93 (6th Cir.1979) in support of its argument for judicial estoppel. However, the court in *Management Investors* did not apply the doctrine of judicial estoppel; it did not allow the plaintiff to proceed with its claims because they were the property of the Chapter 7 bankruptcy estate, so only the Chapter 7 trustee had standing to litigate them. *Id.* at 391–92. As discussed in the next section, a Chapter 13 debtor, as distinguished from a Chapter 7 debtor, has concurrent standing with the

Chapter 13 trustee to litigate claims that are the property of the estate. *In re Heritage Hotel Partnership I,* 160 B.R. 374, 378 (9th Cir. BAP 1993), another case cited by MetLife, is inapplicable because the court applied equitable estoppel, a doctrine which focusses on the relationship between the parties in prior litigation. *See Oneida Motor Freight,* 848 F.2d at 419. Because MetLife is not a creditor in Donato's bankruptcy case, it cannot assert that equitable estoppel applies here.

## II. Lack of Standing

MetLife argues that it should be granted judgment on the pleadings because Donato lacks standing to pursue this lawsuit. MetLife contends that because Donato's claims against it are the property of her Chapter 13 estate, only the Chapter 13 trustee has standing to litigate them.

Bankruptcy courts in various districts are split on the issue of whether a Chapter 13 debtor may sue or be sued. *Compare In re Gardner*, 218 B.R. 338, 342 (Bankr.E.D.Pa. 1998) ("Trustee's status as representative of the estate requires that he be the party suing to assert any prepetition causes of action asserted by Chapter 13 debtors"); *Richardson v. United Parcel Serv.*, 195 B.R. 737, 739 (E.D.Mo.1996) (bankruptcy trustee steps into shoes of debtor to assert debtor's causes of action), *with In re Wirmel*, 134 B.R. 258, 260 (Bankr.S.D.Ohio 1991) (debtor has concurrent power with Chapter 13 trustee to sue and be sued); *Merchants & Farmers Bank v. Vail*, 1996 WL 819806 *2 (N.D.Ala.1996) (affirming decision of bankruptcy court holding that Chapter 13 debtors could pursue prepetition State law claims).

Although the Ninth Circuit has not addressed this issue, at least two other circuits have. The Second Circuit, in *Olick v. Parker & Parsley Petroleum Co.*, held that Chapter 13 debtors have standing to pursue claims against others when those claims belong to the bankruptcy estate because "the reality of a filing under Chapter 13 is that the debtors are the true representatives of the estate and should be given the broad latitude essential to control the progress of their case." *Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 515 (2nd Cir.1998) (citing *In re Freeman*, 72 B.R. 850, 854 (Bankr.E.D.Va.1987)). The Third Circuit, in a footnote in *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1209 n. 2 (3rd Cir.1991), explained that a Chapter 13 debtor could continue to prosecute prepetition claims after filing his bankruptcy petition because "an essential feature of a Chapter 13 case is that the debtor retains possession of and may use all the property of his estate, including his prepetition causes of action ..."

In *Olick*, the court explained that, unlike a Chapter 7 bankruptcy in which a trustee is appointed to liquidate the assets of the bankruptcy estate for the benefit of creditors, a chapter 13 bankruptcy provides for a reorganization plan in which the creditors' recovery is drawn from the debtor's earnings, not from the assets of the estate. *Olick*, 145 F.3d at 516. The court noted that under 11 U.S.C. § 323(a) and (b), the trustee in a case filed under any section of the Bankruptcy Code is the representative of the estate and has the capacity to sue and be sued, but that the Code is silent about whether a Chapter 13 debtor also has the capacity to sue others on a prepetition claim.[4] *Id.* at 515. The court concluded, however, that under 11 U.S.C. § 1303, a Chapter 13 debtor retains the capacity to sue on prepetition causes of action. *Id.* Section 1303 vests in a Chapter 13 debtor certain rights and powers over the assets of the estate to the exclusion of the trustee. *Id.* The legislative history of § 1303 clarifies that, although the power to sue and be sued is not explicitly listed within this section, Congress intended that a Chapter 13 debtor possess the nonexclusive capacity to litigate lawsuits on his or her own behalf. *Id.* (Section 1303 "does not imply that the debtor does not also possess other powers concurrently with the trustee ... it is intended that the debtor has the power to sue and be sued." 124 Cong.Rec. H. 11,106 (daily ed. Sept. 28, 1978); S. 17,423 (daily ed. Oct. 5, 1978)); *accord Maritime Elec.*, 959 F.2d at 1209 n. 2.

This Court finds the reasoning of *Olick* and *Maritime Elec.* persuasive and holds that Donato has concurrent standing with the Chapter 13 trustee to litigate her prepetition causes of action against MetLife. Accordingly, MetLife's motion for judgment on the pleadings based on Donato's lack of

---

4. Under 11 U.S.C. § 1107(a), a Chapter 11 debtor-in-possession is authorized to perform, with limited exceptions, the functions and duties of a Chapter 11 trustee. A Chapter 13 debtor, under 11 U.S.C. § 1303, is provided with certain powers to the exclusion of the Chapter 13 trustee. These powers, listed in 11 U.S.C. §§ 363(b), 363(d), 363(e), 363(f), and 363(*l*), deal with the sale, use, or lease of property of the estate.

standing is DENIED. Nevertheless, because Donato's claims are the property of her Chapter 13 estate, the Court instructs the clerk of the court to send a copy of this order to the Chapter 13 trustee and the creditors listed in Donato's bankruptcy case.

### III. Referral to Bankruptcy Court

MetLife's motion to refer this case to the bankruptcy court is based, in part, upon its contention that the Chapter 13 trustee is the only party with standing to pursue this case. Based upon the Court's ruling that Donato has standing to litigate her claims against MetLife, this argument is unavailing.

 MetLife also requests referral to the bankruptcy court in the event that this Court denies its motion for judgment on the pleadings. Donato opposes this request on the ground that she has demanded a jury trial and does not consent to a jury trial in the bankruptcy court. MetLife responds by arguing that the case should be referred to the bankruptcy court now, and then the reference could be withdrawn so that a jury trial could be held in this Court.

Donato's action is a related, noncore proceeding under 28 U.S.C. §§ 157(b)(3) and (c)(1). Under Bankruptcy Local Rule 9014–2(b) [5], the bankruptcy judge would have to certify to this Court that Donato does not consent to a trial and, upon such certification, the reference to the bankruptcy court would be automatically with drawn. Therefore, MetLife's proposal to refer this case to the bankruptcy court would be inefficient and would result in a duplication of judicial resources. The motion to refer this action to the bankruptcy court is DENIED.

### CONCLUSION

For the foregoing reasons, Defendant's motions are DENIED. The Clerk of the court is instructed to send a copy of this order to the Chapter 13 trustee and the

creditors listed in Donato's Chapter 13 bankruptcy case.

IT IS SO ORDERED.

---

5. Bankruptcy Local Rule 9015–2(b) provides that, in a non-core proceeding under 28 U.S.C. § 157(c)(1), upon certification by the bankruptcy judge that a demand for a jury trial is timely made and all parties have not filed written consent to a jury trial before the bankruptcy judge, the reference of the proceeding shall be automatically withdrawn.