The plaintiffs Steven C. Jinright and his wife Lisa J. Jinright appeal from a summary judgment in favor of the defendants Dennis Paulk and Option Builders, Inc. We reverse and remand.
In 1992, the Jinrights and Paulk, as president of Option Builders, executed a contract under the terms of which Option Builders was to construct a house for the Jinrights. As a part of that construction, Option Builders subcontracted the installation of the exterior walls of the house. That installation consisted of the application of a substance known as "dryvit" and a product known as "R-Wall." The Jinrights experienced problems with the exterior walls of the house, and in April 1996 they began negotiating with Paulk and Option Builders to have the house repaired.
On June 27, 1996, the Jinrights filed in the United States Bankruptcy Court for the Middle District of Alabama a voluntary bankruptcy petition under Chapter 13 of the United States Bankruptcy Code. The Jinrights did not disclose to the bankruptcy court their potential claim against Option Builders and others arising from the alleged faulty construction of their house. In August 1996, the bankruptcy court entered a confirmation order approving the Jinrights' Chapter 13 plan, under which they were to pay 78% of the debts owed to their unsecured creditors. The plan had a duration of 60 months.
On November 7, 1996, the Jinrights sued Paulk, Option Builders, and other defendants (the entities who had installed the exterior walls and who had supplied and manufactured the product used). On January 9, 1998, the Jinrights settled their claims against the defendants other than Paulk and Option Builders, and on February 2, 1998, those defendants were dismissed.
During the pendency of the lawsuit, the Jinrights, on October 30, 1997, filed a motion to amend their bankruptcy plan, under which they reduced to zero the amount to be paid to their unsecured creditors. On January 22, 1998, at a meeting with the bankruptcy trustee at which the Jinrights were to discuss their motion to amend, the Jinrights told the trustee about their lawsuit against Paulk and Option Builders. The Jinrights did not disclose to the trustee that they had settled claims against additional defendants, but the consequences of that omission are not before us. On February 10, 1998, at a hearing before the bankruptcy judge, the Jinrights informed the judge about the pendency of their lawsuit against Paulk and Option Builders. The bankruptcy judge continued the confirmation hearing regarding the Jinrights' amended bankruptcy plan until more information could be developed regarding the potential value of their lawsuit. *Page 555 
We have no further details as to the status of the Jinrights' bankruptcy proceedings.
On April 14, 1998, Paulk filed a motion for a summary judgment, contending that the Jinrights had contracted not with him, but with Option Builders, for the construction of their house. The trial court scheduled a hearing on the motion for May 1, 1998. On April 23, 1998, Paulk and Option Builders filed a joint motion for a summary judgment in which they contended that the doctrine of judicial estoppel prevented the Jinrights from pursuing the lawsuit against them. After the hearing, the trial court entered a summary judgment for Paulk and Option Builders, on the ground that the doctrine of judicial estoppel barred the Jinrights from continuing their lawsuit. After their postjudgment motion was denied, the Jinrights appealed.
The Jinrights argue that the trial court erred in entering the summary judgment for Paulk and Option Builders on the basis of judicial estoppel. They maintain that they have not asserted conflicting positions in their bankruptcy proceedings and their litigation against Paulk and Option Builders. The Jinrights say that when they initially filed their bankruptcy petition, they listed on their schedule of assets a value for their house that reflected the repairs for which they were then negotiating. When the repairs were not made, however, and the necessity for litigation became apparent to them, the Jinrights say that they then amended their schedule of assets to list a lower value for their house and disclosed the litigation to the bankruptcy trustee and the bankruptcy judge. Paulk and Option Builders insist that the doctrine of judicial estoppel should bar the Jinrights from continuing to pursue their claims against Paulk and Option Builders.
The doctrine of judicial estoppel "applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Judicial estoppel looks to the connection between the litigant and the judicial system[,] while equitable estoppel focuses on the relationship between the parties to the prior litigation." Selma Foundry Supply Co. v. PeoplesBank Trust Co., 598 So.2d 844, 846 (Ala. 1992) (quoting OneidaMotor Freight, Inc. v. United Jersey Bank, 848 F.2d 414 (3d Cir.),cert. denied, 488 U.S. 967 (1988)). The doctrine is applied to uphold the integrity of the judicial system. Chandler v. SamfordUniversity, 35 F. Supp.2d 861 (N.D.Ala. 1999). However, this Court has recognized a number of limitations upon the rule against asserting inconsistent positions in judicial proceedings.
 "`[T]he following have been enumerated as essentials to the establishment of an estoppel under the rule that a position taken in an earlier action estops the one taking such position from assuming an inconsistent position in a later action: (1) The inconsistent position first asserted must have been successfully maintained; (2) a judgment must have been rendered; (3) the positions must be clearly inconsistent; (4) the parties and questions must be the same; (5) the party claiming estoppel must have been misled and have changed his position; and (6) it must appear unjust to one party to permit the other to change.'"
28 Am.Jur.2d § 70 Estoppel and Waiver (1966) (as quoted with approval in Porter v. Jolly, 564 So.2d 434, 437 (Ala. 1990)). Thus, a party may not claim the benefit of the doctrine of judicial estoppel unless the party can demonstrate that the party against whom the estoppel is sought procured a judgment in its favor as a result of the inconsistent position taken in the prior proceeding. Moreover, the party claiming the estoppel must have been misled by the conduct of the party against whom the estoppel is sought, and consequently changed its position to its prejudice.Id.
Paulk and Option Builders rely on two cases in which this Court applied the doctrine of judicial estoppel to preclude a *Page 556 
plaintiff who failed to disclose a claim in a bankruptcy proceeding from pursuing related litigation. In Luna v. DominionBank of Middle Tennessee, Inc., 631 So.2d 917, 918 (Ala. 1993), we noted that "[a] debtor in [a bankruptcy proceeding] must disclose any litigation likely to arise in a nonbankruptcy [context]." In Bertrand v. Handley, 646 So.2d 16, 18 (Ala. 1994), we stated that in Luna we had held that the doctrine of judicial estoppel applies to estop a debtor from suing on a claim where the debtor "has failed to disclose the claim in an earlier bankruptcy proceeding." We applied that holding in Bertrand. As we will discuss, those cases are distinguishable from the case now before us.
First, however, a review of bankruptcy law will be helpful in understanding the features of this case that distinguish it fromLuna and Bertrand. United States Bankruptcy Judge Margaret A. Mahoney provides an excellent discussion in In re Griner, 240 B.R. 432
(Bankr.S.D.Ala. 1999):
 "Chapter 13 is a hybrid of chapters 7 and 11. Chapter 13 is more like chapter 11 (the reorganization chapter used primarily by business debtors) than chapter 7 (the liquidation chapter of the Bankruptcy code). Chapter 13 is available to individuals who earn a regular income. Debtors propose a plan by which they will repay some or all of their debts through regular payments to a chapter 13 trustee. The trustee pays the sums collected to creditors according to the plan for a period of up to five years. The trustee is not involved in the daily lives of the debtors. He or she does not take possession of debtors' nonexempt assets or monitor ordinary course usage of assets. The trustee does not receive any of the debtors' earnings except what is paid to him or her as prescribed by the chapter 13 plan.
 "In chapter 11 cases, unless a trustee has been appointed by the court, there is no trustee. The debtor handles all of his or her own affairs. This includes use, sale or lease of all assets. In chapter 7, a trustee is automatically appointed in each case. The debtor relinquishes all authority over his or her nonexempt assets.
 "A chapter 7 trustee has one power which is specifically not given to a chapter 13 trustee. Under 11 U.S.C. § 704(l), a chapter 7 trustee `shall collect and reduce to money property of the estate.' `Property of the estate' is all nonexempt assets in which the debtor had an interest before bankruptcy, such as a cause of action for a work related injury. 11 U.S.C. § 541. This power therefore compels a chapter 7 trustee to take over all nonexempt lawsuits of the debtor.
 "In a chapter 13 case, unless otherwise specifically provided by the [debtor's] plan, a debtor remains in possession of all of his or her assets pre-and postconfirmation. 11 U.S.C. § 1306(b). This is in contrast to chapter 7 cases where the trustee `collects (takes control of) and reduces to money' all nonexempt assets. . . ."
240 B.R. at 436.
The Jinrights filed a bankruptcy proceeding under Chapter 13, under which debtors may repay their creditors while maintaining their assets in accordance with a plan developed by the debtors with the approval of the bankruptcy court and their creditors. Those plans may be amended at any time, and last for up to five years. The debtors are not discharged until they have fulfilled the terms of their plans. The Jinrights have not yet received a discharge in bankruptcy.
The debtor in Luna filed a Chapter 7 bankruptcy proceeding; in such a proceeding the bankruptcy court liquidates the debtor's assets, if any, and pays creditors whatever funds are available. Most Chapter 7 plans are concluded quickly, and the debtors are discharged when the funds obtained from the liquidation of their assets have been distributed. Luna did not file his lawsuit until some 18 months after *Page 557 
he had received his bankruptcy discharge. Furthermore, the defendant in Luna's action was one of the creditors in the bankruptcy proceeding, a proceeding in which Luna had failed to disclose his potential claim against the defendant. This Court applied the doctrine of judicial estoppel to prevent the debtor from suing his creditor after the conclusion of earlier bankruptcy proceedings in which he failed to disclose his claim. Luna, 631 So.2d at 918-19.
The debtor in Bertrand obtained a default judgment in her lawsuit against the defendant, before she commenced her bankruptcy proceedings. She initially filed for bankruptcy protection under Chapter 13, but dismissed that case and refiled, the second time under Chapter 7. After she received her bankruptcy discharge, the defendant sought to set the default judgment aside. This Court applied the doctrine of judicial estoppel to prevent her from pursuing the claim on which the judgment was based, because she had not disclosed the default judgment in her bankruptcy proceeding. Bertrand, 646 So.2d at 19.
The Jinrights' case is more on point with Selma Foundry, a case in which the plaintiff/debtor omitted its claim against the defendant from its initial bankruptcy disclosures, but filed amended disclosure statements approximately three months later; there was no indication that the bankruptcy court or the defendant took any action in reliance on the initial disclosure statements. This Court refused to apply the doctrine of judicial estoppel. 598 So.2d at 847.
The purpose of the doctrine of judicial estoppel will not be accomplished, but, rather, will be frustrated if defendants are allowed to use this doctrine to their advantage at the expense of plaintiffs with valid claims. Paulk and Option Builders will receive a windfall if they are allowed to escape any potential liability to the Jinrights on the basis that the Jinrights failed to list their potential claim in their initial bankruptcy proceeding, even though the bankruptcy court and the trustee have now been fully informed about the lawsuit and the Jinrights' potential claim. Judge Mahoney discussed this problem in In reGriner. We find her order to be well reasoned and instructive:
 "Defendants also contend that the doctrine of judicial estoppel bars Sidney Griner from prosecuting or continuing the state court action. This doctrine precludes a party from assuming a position in a legal proceeding inconsistent with a position previously asserted. Luna v. Dominion Bank of Middle Tennessee, Inc., 631 So.2d 917, 918 (Ala. 1993).
". . . .
 "In Luna, the Supreme Court of Alabama stated that, `judicial estoppel applies, where a debtor in bankruptcy proceedings fails to disclose any claim that may be presented in a nonbankruptcy [context], to estop the debtor from presenting the claim.' Id. at 919. Luna was precluded from pursuing his state court suit because it arose prepetition and he failed to disclose it in his bankruptcy proceedings. Travelers contends that the Luna decision governs this case. The Court finds Luna distinguishable for the following reasons:
 "First, Luna brought claims against a creditor of his and related entities. Luna's claims were related to a prepetition claim held by the creditor which was discharged in Luna's bankruptcy case prior to his filing suit in state court. If the creditor knew about Luna's claim against it, the creditor may have been able to offset the claims or take some other action in Luna's bankruptcy case that was not available because it was unaware that the bankruptcy estate included a claim against it. Travelers is not a creditor in the [Griners'] bankruptcy case. Travelers and all of the defendants in Sidney Griner's state court suit are not prejudiced by Griner's failure to list the suit against them as an asset. See, Donato [v. Metropolitan Life Ins. *Page 558 
 Co.], 230 B.R. 418 [(N.D.Cal. 1999)] (judicial estoppel found not to bar debtor's lawsuit because defendant was not a creditor in debtor's case and debtor would not benefit by omission of suit from her schedules).
 "Second, the bankruptcy court relied on Luna's schedules in granting him a discharge. Prior to granting the discharge, the court was never made aware of Luna's claim against the creditor. Thus, the court's integrity was impinged by Luna's failure to list the suit as a prepetition asset. Consolidated Stores, Inc. v. Gargis, 686 So.2d 268, 274 (Ala.Civ.App. 1996) (judicial estoppel serves to protect the integrity of the judicial proceedings). In this case, the Griners have not yet received a discharge and they amended their bankruptcy papers to include the state court suit. The initial omission of the suit did not impinge upon this Court's integrity.
 "The fact that Luna, unlike the Griners, never amended his bankruptcy schedules and chapter 13 plan is also an important distinction. See, Selma Foundry and Supply Co., Inc. v. Peoples Bank and Trust Co., 598 So.2d 844, 847 (Ala. 1992) (debtor not judicially estopped from asserting a suit which was not included in its original disclosure statement since debtor listed the suit in an amended disclosure statement); Chandler v. Samford University, 35 F. Supp.2d 861 (N.D.Ala. 1999) (court judicially estopped debtor from pursuing discrimination action in part because she deliberately manipulated the courts when she chose not to amend her schedules to reflect the action as an asset of her bankruptcy estate). The Griners' amendment corrects their initial mistake and makes any nonexempt amount recovered from the state court suit available for distribution to creditors. Their election to amend their schedule of exemptions to include an `unknown' portion of Mr. Griner's state court suit does not change the Court's conclusion. The Griners have the right to amend their schedule of exemptions `at any time before the case is closed.' Fed.R.Bankr.P. 1009. True, such amendments are precluded if the debtors concealed the asset. Doan v. Hudgins (In re Doan), 672 F.2d 831, 833 (11th Cir. 1982). However, there is no evidence that the Griners attempted to conceal the suit. In fact, they listed it in their initial statement of affairs. Id. (debtors disclosed tax refund in initial filing and they therefore were permitted to amend schedules to claim tax refund as exempt).
 "Finally, Luna failed to indicate that he had a cause of action in any of his bankruptcy documents. Luna, 631 So.2d at 919. The Griners initially listed their suit against Travelers in their statement of affairs. This supports the conclusion that the Griners mistakenly omitted their suit from their bankruptcy schedules and did not intentionally conceal a possible asset from their creditors.
". . . .
 "Travelers contends that whether the Griners attempted to conceal the lawsuit is irrelevant and the Griners should be judicially estopped merely because they were aware of the cause of action prior to filing bankruptcy and did not include it as an asset in their schedules. The Court finds that whether Alabama or federal common law governs, mere knowledge or awareness on the part of the debtor is not sufficient to find that judicial estoppel applies. Judicial estoppel requires an intent that the court accept the truth of the facts alleged coupled with the receipt of an advantage from the assertion, Consolidated Stores, Inc., 686 So.2d at 274, 275 (Alabama law), or that the debtor obtains a benefit by deliberate manipulation. Chandler v. Samford University, 35 F. Supp.2d 861, 863 (N.D.Ala. 1999) (federal law); In re Daniel, 205 B.R. 346, 348 (Bankr.N.D.Ga. 1997) (judicial estoppel found not to preclude debtor's amendment because *Page 559 
 no evidence was presented that debtor intentionally or fraudulently concealed lawsuit). For the reasons mentioned above, especially because the Griners initially listed the suit in their statement of affairs, Travelers did not prove that the Griners intended to conceal Mr. Griner's state court suit or received a benefit from their initial omission of the suit. Consequently, Sidney Griner is not judicially estopped from continuing his state court suit.
". . . .
 "Travelers' position is overly harsh and inequitable as well. Everyone, except Travelers, loses under its theory. If a debtor fails to include assets on his schedules and later seeks to add them, the Bankruptcy Rules allow it `as a matter of course at any time before the case is closed.' Fed.R.Bankr.P. 1009(a). A bankruptcy court has ample powers to punish debtors who wrongfully conceal assets, i.e., sanctions under Fed.R.Bankr.P. 9011, conversion of the case to chapter 7 (§ 1307(c)), revocation of discharge (§ 1328(e)), referral for criminal charges (18 U.S.C. § 152(1), (2), (3), (7)). Travelers['] position punishes the creditors of the nondisclosing debtor, not just the debtor. The better result is to allow the claim to be prosecuted and collected, order the funds paid toward claims filed in the case, and punish the debtor another way."
240 B.R. at 438-39. See also Donato v. Metropolitan Life Ins.Co., 230 B.R. 418 (Bankr.N.D.Cal. 1999).
We agree with the Griner court that a debtor's mere knowledge or awareness of a potential claim and the debtor's failure to include the claim as an asset on the bankruptcy schedules filed with the court, without more, are not sufficient to invoke the application of the doctrine of judicial estoppel. Other courts that recognize the doctrine of judicial estoppel as a bar to a debtor's assertion of a claim not identified as an asset in an earlier bankruptcy proceeding require that the party seeking to apply the doctrine demonstrate (1) that the positions asserted by the party against whom the estoppel is sought are in fact inconsistent, and (2) that the inconsistency would allow a party to benefit from the deliberate manipulation of the courts.Chandler, 35 F. Supp.2d at 863-64. See, also, Ryan Operations,G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355 (3d Cir. 1996); Inre Tippens, 221 B.R. 11 (Bankr.N.D.Ala. 1998). Factors such as the chapter under which the debtor sought bankruptcy protection, whether the debtor has been discharged in bankruptcy, and whether the debtor amended the bankruptcy schedules to include the omitted asset should be significant to an inquiry regarding whether to apply the doctrine of judicial estoppel to bar the debtor's claim. Furthermore, under this Court's decision in Porter and the United States bankruptcy court's decision in Griner, a defendant seeking to apply the doctrine must prove prejudice to the defendant. SeePorter, 564 So.2d at 437; and Griner, 240 B.R. at 438.
The inquiry regarding the applicability of the doctrine of judicial estoppel to a particular case will raise some questions of fact in addition to questions of law. Among those questions of fact often will be whether a debtor who is engaged in bankruptcy proceedings knew or should have known about claims or causes of action that should be disclosed as assets. We note with approval that the Court of Civil Appeals has so held in Underwood v. FirstFranklin Financial Corp., 710 So.2d 424 (Ala.Civ.App. 1997). In that case, the court reversed a summary judgment entered on the basis of judicial estoppel, because a question of fact existed as to whether the plaintiff, during her bankruptcy proceedings, had known or should have known that she had causes of action against the defendants she sued approximately eight months after she had obtained a hardship bankruptcy discharge.
We conclude that the doctrine of judicial estoppel should not be applied in this case *Page 560 
so as to prevent the Jinrights from maintaining their action against Paulk and Option Builders. Although the Jinrights' initial failure in their bankruptcy proceedings to list their claim against Paulk and Option Builders as an asset was inconsistent with the claims they made in their lawsuit against Paulk and Option Builders, nothing before us indicates that the Jinrights will benefit from that omission, nor has there been any showing that Paulk and Option Builders have been prejudiced by the omission. According to the record before us, the Jinrights have pending in the bankruptcy court a motion to amend their Chapter 13 plan so as to pay zero to their unsecured creditors. This case is like Griner — the application of the doctrine of judicial estoppel would punish the Jinrights and their creditors and would produce a windfall for Paulk and Option Builders. On the other hand, if the Jinrights are allowed to maintain their claim against Paulk and Option Builders, then any recovery obtained by the Jinrights presumably will be available for distribution to their creditors through their bankruptcy plan.
We reverse the judgment in favor of Paulk and Option Builders and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, JOHNSTONE, and ENGLAND, JJ., concur.
BROWN, J., concurs in the result.