On July 14, 1998, L. Tony Singley sued Tom Bentley individually and d/b/a Bentley Farms, alleging a breach of contract, a breach of warranty, and fraud arising from a "Growing Contract" entered into between the parties. On August 10, 1998, Bentley moved to dismiss the complaint. On February 10, 1999, the trial court entered an order granting Bentley's motion as to the breach-of-warranty and fraud counts and denying the motion as to the breach-of-contract claim. Thereafter, Bentley filed an answer to the remaining contract count.
On December 15, 1999, Bentley moved for a summary judgment, arguing, among other things, that Singley's action was barred by the doctrine of judicial estoppel. On January 20, 2000, the court entered an order granting Bentley's motion for a summary judgment, holding that Singley's breach-of-contract action was barred by the doctrine of judicial estoppel. The court made its summary judgment final, pursuant to Rule 54(b), Ala.R.Civ.P., expressly finding no just reason for delay.[1]
Singley appealed. This case was transferred *Page 801 
to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
In reviewing the disposition of a motion for summary judgment, we use the same standard the trial court used in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Bussey v. JohnDeere Co., 531 So.2d 860, 862 (Ala. 1988); Rule 56(c), Ala.R.Civ.P. When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of BaldwinCounty, 538 So.2d 794 (Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). This court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412
(Ala. 1990).
On May 19, 1994, Singley and Bentley entered into a contract to grow sweet potatoes. Pursuant to the terms of the contract, Singley was to prepare and cultivate 150 acres of land in Dallas County to grow sweet potato transplants provided by Bentley at a rate of $16 per 1,000 transplants. Singley was responsible for providing the tractor and labor to "turn" the potatoes for harvest, and Bentley was responsible for harvesting the potatoes, at a cost of $1.15 per bushel. Bentley agreed to purchase the potatoes from Singley between August 1, 1994, and November 15, 1994, at the fair market price, based on the daily on-grade prices for sweet potatoes published by the Alabama Department of Agriculture Market News Service, based on grade requirements published by the U.S. Department of Agriculture.
The contract set forth a maximum and minimum price that Singley would receive for each grade of potato. He was to be paid a maximum of $8 and a minimum of $4.25 for a 56-pound bushel of "number 1" (field run) potatoes; a maximum of $3.50 and a minimum of $1.50 for a 56-pound bushel of "jumbo" potatoes; and a maximum of $2 and a minimum of $1.15 for a 56-pound bushel of number 2 and "canner" potatoes. The potatoes were to be transported to the Bentley facilities, where they were to be graded by a government inspector. Bentley had the discretion, based on market conditions, to leave "number 2, "jumbo," and "canner" potatoes in the field.
Bentley purchased the sweet potato transplants from Louisiana State University. He supplied the potato transplants and the machinery and labor to place the transplants in the ground. Bentley paid $26,000 for the transplants. The planting process took approximately three to four weeks to complete.
Bentley harvested the potatoes, as provided for by the contract. The potatoes were sorted in the field and placed in bins according to their potential grade. The potatoes were then loaded on trucks for transport to Bentley farms. The truck drivers issued field tickets reflecting the number of bins and potential grade of the potatoes. Singley would count the number of bins and then sign the tickets before the trucks left the field for the Bentley facilities. Bentley supplied Singley with an itemized list of the number of bushels and grade of potatoes harvested. This list represented the number and grade of potatoes as they were sorted in the field. The list indicated that 17,928 bushels of "number 1" field-run potatoes, 8,730 bushels of *Page 802 
"canners", and 468 bushels of "jumbos" were harvested, for a total harvest of 27,126 bushels of potatoes. The harvested potatoes were not graded by a government inspector at the Bentley facilities.
After the harvest, Bentley prepared a settlement sheet, itemizing his expenses and income generated from the crop. The settlement sheet indicated that Bentley's expenses were $50,484.59, which included the costs of the transplants, fertilizer, equipment, labor, chemicals, and a $6,500 advance to Singley.
The settlement sheet also indicated that Bentley owed Singley as follows: $28,421.40 for 8,484 bushels of "number 1" potatoes at a rate of $4.50 per bushel, less $1.15 per bushel;[2] $2,486 for 2,486 bushels of "number 2" potatoes at a rate of $2.15 per bushel, less $1.15 per bushel; $2,296.50 for 1,531 bushels of "jumbos" at a rate of $2.65 per bushel, less $1.15 per bushel; and $6,586 for 13,172[3] bushels of "canners" at a rate of $.50 — for a total of $39,789.90. Singley owed Bentley $50,484.59 for expenses. According to Bentley, this left Singley owing him $10,694.69. Singley disagrees. The grades of the potatoes on which the rate of pay was based listed on the settlement sheet differed from those grades indicated on the itemized list that Bentley had previously given to Singley. Singley contends that he should have been paid based on the grades listed on the itemized sheet.
In 1994, Singley filed for federal crop-disaster benefits for his 1994 sweet-potato crop because of adverse weather conditions. He reported to the United States Department of Agriculture's Agricultural Stabilization and Conservation Service ("ASCS") that his sweet-potato crop had produced only 15,348.68 bushels of sweet potatoes — 11,778 bushels fewer than the 1994 crop had actually produced. Singley received approximately $26,916 in federal crop-disaster benefits for 1994.
In support of his motion for a summary judgment, Bentley argued that Singley's action was barred by the doctrine of judicial estoppel, because Singley had represented to the ASCS that the 1994 sweet-potato crop had produced only 15,348.68 bushels and had received $26,916 in disaster benefits based on that representation; whereas, in the present action he contended that the crop had produced 27,126 bushels and that he had been underpaid for those potatoes. As previously noted, the trial court entered a summary judgment in favor of Bentley, holding that Singley's action was barred by the doctrine of judicial estoppel. We conclude that the trial court erred in relying upon the doctrine of judicial estoppel.
The doctrine of judicial estoppel applies to preclude a party from asserting a position in a legal proceeding that is inconsistent with a position previously asserted by that party. Jinright v. Paulk, 758 So.2d 553
(Ala. 2000). The doctrine of judicial estoppel looks to the relationship between the litigant and the judicial system, while the doctrine of equitable estoppel looks to the relationship between the parties and the prior litigation. Id. Judicial estoppel is applied to uphold the integrity of the judicial system. Id. Our supreme court, however, has recognized a number of limitations upon the doctrine: *Page 803 
 "`[T]he following have been enumerated as essentials to the establishment of an estoppel under the rule that a position taken in an earlier action estops the one taking such position from assuming an inconsistent position in a later action: (1) The inconsistent position first asserted must have been successfully maintained; (2) a judgment must have been rendered; (3) the positions must be clearly inconsistent; (4) the parties and questions must be the same; (5) the party claiming estoppel must have been misled and have changed his position; and (6) it must appear unjust to one party to permit the other to change.'"
Porter v. Jolly, 564 So.2d 434, 437 (Ala. 1990), quoting 28 Am. Jur.Estoppel and Waiver § 70 (1966).
 "[I]t is also essential that the party claiming the estoppel be misled by the conduct of the party against whom the doctrine is invoked and in consequence change his position to his prejudice. First National Bank of Mobile v. Burch, 237 Ala. 680, 188 So. 859 (1939). `[T]he party claiming the estoppel must have been ignorant of the real facts, and, in reliance on the statements or admissions, he must have changed his position and sustained prejudice by reason thereof.' First National Bank of Mobile, 237 Ala. at 686, 188 So. at 863."
Porter, 564 So.2d at 437. The doctrine of judicial estoppel also applies when the prior inconsistent position was asserted in a quasi-judicial proceeding. See Consolidated Stores, Inc. v. Gargis, 686 So.2d 268
(Ala.Civ.App. 1996) (holding the doctrine applicable where prior inconsistent position was asserted in a Social Security disability hearing).[4]
The doctrine of judicial estoppel is inapplicable in this case for several reasons. First, Bentley did not present evidence indicating that Singley had asserted a position in a prior judicial or quasi-judicial
proceeding that is inconsistent with a position he now asserts. An application for federal crop-disaster benefits filed with the Department of Agriculture is, at best, a quasi-judicial proceeding; however, Bentley presented no evidence regarding the nature of the process by which a farmer obtains disaster benefits from the Department of Agriculture. Counsel for Bentley explained in a letter brief to the trial court that applications for crop-disaster relief must be approved by the board of supervisors for the Farm Services Administration, which is an agency of the Department of Agriculture, and that the board of supervisors is an elected committee, which is compensated from the Department of Agriculture's budget. Counsel concluded that the function of providing crop-disaster relief is an agency proceeding and, therefore, quasi-judicial in nature. However, the unsworn statements of counsel are not considered evidence. American Nat'l Bank Trust Co. v. Long,281 Ala. 654, 207 So.2d 129 (1968). A basic element of the doctrine of judicial estoppel is that the alleged inconsistent position be asserted in a prior judicial or quasi-judicial proceeding; however, Bentley did not establish by competent evidence the nature of the proceeding in which the alleged inconsistent position was previously asserted.
Second, we conclude that the parties and the questions presented are not the same in the two proceedings. Bentley presented no evidence indicating that he was a party to Singley's application for disaster *Page 804 
benefits. In fact, Bentley testified in an affidavit that he had not prepared any documents in regard to Singley's representations to the Department of Agriculture and had not participated in those representations in any way. Further, the questions presented by Singley's present action are different from those presented by an application for disaster benefits. Singley alleges that Bentley breached the growing contract by failing to provide a government inspector to grade the potatoes; by failing to pay him according to the daily "on-grade" prices; and by providing him with defective transplants.[5]
These issues are unrelated to the question whether Singley is entitled to receive crop-disaster benefits based on adverse weather conditions.
Finally, we note that Bentley presented no evidence indicating how he was misled by Singley's representation to the Department of Agriculture and thus changed his position to his prejudice based on that representation. Bentley argues in his brief various ways in which he alleges he was prejudiced by Singley's representation to the Department of Agriculture that the 1994 crop produced only 15,348.68 bushels of sweet potatoes; however, it is undisputed by the parties that the 1994 crop had produced 27,126 bushels of sweet potatoes. Bentley was aware of this fact at all relevant times and thus was not "ignorant of the real fact" that the crop had produced 27,126 bushels of potatoes; therefore, he could not have changed his position based on any representation Singley made to the Department of Agriculture regarding a lesser number of bushels of sweet potatoes.
After carefully reviewing the record, we conclude that the trial court erred in determining that Singley's contract claim is barred by the doctrine of judicial estoppel. Accordingly, we reverse the judgment and remand the case for further proceedings.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
ROBERTSON, P.J., and MONROE and THOMPSON, JJ., concur.
CRAWLEY, J., concurs in the result.
[1] Alfa Mutual Insurance Company had moved to intervene in the action, seeking a judgment declaring that it had no duty to defend or indemnify Bentley in the action filed by Singley. Alfa moved for a summary judgment in its declaratory-judgment action. Addition-ally, Bentley had moved for an attorney fee and costs pursuant to the Alabama Litigation Accountability Act, § 12-19-270 et seq., Ala. Code 1975. On April 3, 2000, this court remanded the case for entry of an order complying with Brown v. Whitaker Contracting Corp., 681 So.2d 226
(Ala.Civ.App. 1996). The trial court entered an order in compliance withBrown on April 27, 2000. However, our supreme court later overruledBrown, in Schneider National Carriers, Inc. v. Tinney, 776 So.2d 753
(Ala. 2000), holding that Rule 54(b) does not require a trial court to set forth the factors it considered in finding that there is no just reason for delay.
[2] The contract provides that Bentley was to be paid $1.15 per bushel for harvesting the crop, which was to be deducted from the potatoes at the time of sale.
[3] The settlement sheet actually indicated that the crop had produced 14,635 bushels of canners; however, Bentley charged Singley a 10% dockage fee, which was deducted from the number of total bushels of canners — thus, he was owed for $13,172 bushels.
[4] Gargis was overruled on other grounds by our supreme court in Bleier v. Wellington Sears Co., 757 So.2d 1163 (Ala. 2000).
[5] Singley contends that a large portion of the transplants were infected with a disease known as "scurf."